557 So.2d 422 (1990)
WHITNEY NATIONAL BANK OF NEW ORLEANS
v.
POYDRAS CENTER ASSOCIATES, a Louisiana Joint Venture and HCB Contractors, a Texas General Partnership.
No. 89-CA-0434.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1990.
*423 Jerry A. Brown, Kathryn Lichtenberg, New Orleans, for plaintiff/appellee.
Danny G. Shaw, David J. Krebs, New Orleans, for defendants/appellants.
Before CIACCIO, WILLIAMS and BECKER, JJ.
BECKER, Judge.
Defendant, Poydras Center Associates, appeals the trial court's finding that an oral contract existed between itself and plaintiff, Whitney National Bank. Plaintiff sued to recover damages it allegedly incurred when defendant, Poydras Center Associates (PCA), breached its duties under the alleged oral contract. Whitney National Bank has answered the appeal seeking an increase in damages.
On January 17, 1986, plaintiff Whitney National Bank filed suit against Poydras Center Associates, a Joint Venture, and HCB Contractors seeking recovery of damages in tort and breach of contract. Whitney National Bank is the owner of a seven story building at the corner of Camp Street and Poydras Street. The ground floor is used by Whitney as a branch bank. The other floors are leased to tenants. Poydras Center Associates owns the adjoining property on which it constructed a twenty seven story office building. HCB was the general contractor on the construction job.
Whitney's cause of action against HCB was based in tort, seeking recovery for damages which it incurred during the construction of PCA's building. Whitney sued PCA in tort and contract, alleging that an oral contract existed whereby Whitney would release a five foot servitude which existed over PCA's property provided PCA paid for all expenses incurred so that the two buildings could abut.
After trial on the merits, the trial court rendered judgment in favor of Whitney against both HCB and Poydras Center Associates. The trial court found that plaintiff had incurred $33,857.15 in damages as a result of the actual construction work. The trial court further found that an oral contract did exist between Whitney and Poydras Center Associates, and that Whitney suffered damages in the amount of *424 $40,400.00 from PCA's breach of the contract.
Poydras Center Associates and HCB each filed a motion for new trial which was denied by the trial court. HCB elected not to appeal and satisfied the portion of the judgment relating to tort damages.
On appeal, Poydras Center Associates assigns five specifications of error:
(1) The trial court erred as a matter of law in holding that the elements of consent and contractual object had been satisfied and that there was a contract between Whitney and Poydras Center Associates;
(2) The trial court committed manifest error in awarding plaintiff $27,400.00 for modification of its fire escape;
(3) The trial court committed manifest error in awarding Whitney $9,500.00 for modification of its air conditioning system;
(4) The trial court committed manifest error in awarding Whitney $3,500.00 for relocation of its emergency electrical service; and
(5) The trial court erred in holding that interest should run from date of judicial demand rather than date of judgment.
In its answer to the appeal, Whitney argues that the damages for modification of the air conditioning system should be increased to $37,115.00, and the damages for modification to the fire escape be increased to one-half of the entire cost borne by Whitney. Whitney further contends that the trial court erred in not ruling that legal interest was to run from the date PCA was in active violation of the contract. In the alternative, Whitney argues legal interest should run from the date of demand, November 30, 1981.
The subject matter of this lawsuit arises out of Poydras Center Associates' attempt to remedy a problem engendered by its plan to construct a twenty-seven story office building on land that was burdened by a five foot servitude in favor of Whitney. The mistake, when discovered by PCA, which could not have been corrected without extensive redesign, would have resulted in a substantial impact on both the cost of the new building as well as the construction schedule. Therefore, PCA approached Whitney to permit PCA's new office building to abut the southern face of Whitney's building.
Commencing in the summer of 1980, negotiations, the exchange of correspondence, and meetings between PCA and Whitney all occurred. The significance of these activities is hotly contested by the parties. PCA contends that the communications between Whitney and PCA amounted to nothing more than preliminary negotiations. However, Whitney argues that representations made, communications exchanged and actions undertaken by the parties gave rise to contractual obligations that were eventually breached by PCA.
The trial court, after a trial on the merits, found that an oral contract did exist between Whitney and PCA, and that the contract was indeed breached by PCA. The court specifically found that PCA "induced plaintiff to expend funds or otherwise to obligate itself to others." The trial court, in its reasons for judgment, stated that, in finding a contract existed, it relied upon "the clear, pointed and convincing testimony of plaintiff's Building Manager, Guy Ponti" and "the clear and unambiguous language of a letter from the Poydras Center representative, James M. Caswell, transmitted as an enclosure in a letter from Leon S. Cahn (Poydras Center's attorney) to Andrew Zengel (Whitney's attorney), to wit:
`Please be advised that we will pay all cost, of any nature incurred regarding the closing of the alley between Whitney National Bank and our property ...'."
A contract is defined as "an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement." LSA-C.C. article 1761. For a valid contract to exist, there must be (1) parties legally capable of contracting; (2) their consent legally given; (3) a certain object, which forms the matter of agreement; and (4) a lawful purpose. LSA-C.C. article 1779; Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La.1989). A contract can be express *425 or implied in fact. An implied in fact contract is one which rests upon consent implied from facts and circumstances showing mutual intention to contract. Morphy, supra; V-8 Taxi Cab Service, Inc. v. Hayes, 322 So.2d 442 (La.App. 4th Cir. 1975). Such implied in fact contracts are not different in their legal effect from express, written agreements. Comment, Actio De In Rem Verso in Louisiana: Minyard v. Curtis Products, Inc., 43 Tul.L. Rev. 263, 298 (1969).
Defendant, PCA, contends that the trial court erred when it found that the elements of consent and contractual obligation had been satisfied. The element of consent is an issue of fact, Strecker v. Credico Financial, Inc., 444 So.2d 783 (La. App. 4th Cir.1984), and absent manifest error, we may not disturb the trial court's findings on the existence of consent. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
The trial court relied heavily upon the letter of James Caswell to his attorney, and upon the repeated silence and inaction of PCA's representative to the correspondence of Whitney concerning the ongoing modifications to the Whitney building.
Acceptance of an offer may of course be made by silent deed as well as by word; consent may be implied from actions under the circumstances, as well as by expressed words; but such acceptance of, founded on such consent to, an offer nevertheless creates a valid contract, and the offeror is bound by the obligation previously offered by him in exchange for the act which the obligee has performed in response to the offer...

Johnson v. Capital City Ford Company, 85 So.2d 75 (La.App. 1st Cir.1955).
The acceptance of an offer in such situations is implied from the actions of the party to whom the offer was made. LSA-C.C. articles 1797, 1803, 1811, 1816, and 1817. St. Romain v. Midas Exploration, Inc., 430 So.2d 1354 (La.App. 3rd Cir.1983); Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App. 3rd Cir. 1974), writ denied, 293 So.2d 177 (La.1974).
Upon review of the record, we can not say that the trial court was manifestly erroneous in finding that PCA consented to an agreement with Whitney whereby PCA would pay for all modifications necessary to the Whitney building for the Whitney building and the Poydras building to abut. The trial court, in making its determination, looked to the testimony of Guy Ponti, the Whitney's building manager; James Caswell, and Frank Feagle, PCA's representatives; and Paul Hogan, Whitney's representative. Not surprisingly, Whitney's representatives' testimony conflicted with PCA's representatives. Caswell and Feagle testified that Caswell's letter was sent only to aid in negotiations. They further testified that they informed Paul Hogan, a vice-president with Whitney, that the deal was off in February 1981. Hogan testified that he never received any such communication from Caswell indicating that PCA no longer had any interest in pursuing the agreement. Clearly, the trial judge's findings were based upon his credibility determinations of the witnesses. This court must give great deference to the judgment of the trial judge who is in a position to observe the demeanor of the witnesses in assessing credibility. Andrews v. La. Coca-Cola Bottling Co., 454 So.2d 1193 (La.App. 4th Cir.1984), writ denied, 459 So.2d 544 (La.1984).
Nor can we say that the trial court was manifestly erroneous in finding the existence of a contractual object. The object of a contract is something which one or both of the parties oblige themselves to give, or to do, or not to do. La.C.C. art. 1883. The testimony of both PCA's and Whitney's representatives clearly indicates the object of the agreement: PCA would pay for all modifications to the Whitney building so that two buildings could abut, and thus, Whitney would release its servitude over a five foot alleyway on PCA's property.
Therefore, we find that the trial court did not commit manifest error in finding that an oral contract existed between PCA and Whitney.
*426 One of the incidents of the obligations of contracts is that the one who violates those obligations is liable for damages "which the other party has sustained by his default." LSA-C.C. article 1930; Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978). Accordingly, Poydras Center Associates is responsible for the modifications made by Whitney which were necessary for the abutment of the two buildings. The trial court awarded Whitney $9,500.00 for the modification to the air-conditioning system, $27,400.00 for the modification of the fire stairwell and $3,500.00 for the relocation of the emergency electrical service.
A review of the trial transcript reveals that Guy Ponti testified that the emergency electrical service located on the external south wall of the Whitney Building had to be relocated due to the demolition of the previous building on PCA's property and the proposed abutment of the Poydras Center. On January 23, 1981, Whitney contracted with Sharp Electric, Inc. for the performance of this work which was completed within a matter of weeks. Whitney paid $11,000.00 for the relocation and upgrading of the emergency electrical service. The trial court was within its discretion in finding that $3,500.00 of the $11,000.00 was related solely to the relocation of the emergency electrical service.
The trial record indicates that originally the Whitney building had, in addition to the central air and heating unit, eleven window air conditioning units on the sixth and seventh floor. Four of these window units would have had to be removed if the proposed abutment occurred.
Whitney, which had been planning renovation work on the air conditioning unit, had all eleven window units removed and replaced with a supplemental central air conditioning and heating system. The total cost of the new system was $37,115.00. The trial court awarded plaintiff $9,500.00, representing four/elevenths of the total cost. We can not say that the trial court abused its discretion in making this award.
Both plaintiff and defendant contend that the trial court erred in awarding $27,400.00 for the modification of the fire stairwell. While plaintiff argues for an increase of the award, defendant suggests that no award should have been given.
At the time that Whitney was renovating the bank building and prior to the construction of the Poydras Center, the Whitney building had a single outside fire escape. This escape was a metal stairs attached to the outside of the building which went down from the seventh story to the second story. Tenants climbing down the fire ladder would end up standing on the roof of the first story. In order to allow them to reach the ground, Whitney had attached fire stairs to the outside of the building, which would swing down from the first floor roof to the alley.
When Mr. Caswell first approached Mr. Hogan about closing the alley, Mr. Hogan pointed out that the swing down fire stairs would have to be removed from the alley and that an alternate escape route from the roof of the first story of the Whitney building to the ground would have to be devised. PCA's architects prepared a plan, SK-11, which depicted an escape route from the roof of the first floor of the Whitney building to the Poydras Center to the ground. The concept was acceptable to all parties.
There was a second fire escape completely unrelated to the alley. This was an internal stairs with narrow steps, known as "winders." Whitney had a problem as both fire escape systems were seventy-five years old. Whitney decided that, in order to remedy this problem, it would build two fully enclosed towers. The first tower would replace the external stairway and empty into the alley via the swing-down fire stairs. The second tower would exit into the internal stairway. The total cost of the fire escape system was $274,000.00. The trial court awarded Whitney $27,400.00 (ten percent of the total cost) for the changes to the fire escape system. We do not find any manifest error in the trial court's award.
The trial court, after awarding damages, indicated that legal interest on the judgment would begin to run from the date *427 of judicial demand. The law is clear that legal interest is recoverable on debts arising ex contractu from the time they become due, unless otherwise stipulated. LSA-C.C. art. 1938; Teledyne Movable Offshore, Inc. v. C. & K. Offshore Co., 376 So.2d 357 (La.App. 3rd Cir.1979); Calhoun v. Louisiana Materials Co., 206 So.2d 147 (La.App. 4th Cir.1968), writ refused, 251 La. 1050, 208 So.2d 324 (La.1968).
Damages are due `from the moment' of an active violation of a contract (C.C. 1932) and from `the time that the debtor has been put in default' when the breach has been passive. C.C.1933. A debtor may be put in default `either by the commencement of a suit, by a demand in writing ...' or in other ways. C.C.1911.

Alexander v. Burroughs Corp., supra 359 So.2d at 613.
Thus, the determination of when legal interest begins to run turns upon when the existence of the debt becomes certain. The scope of PCA's obligation to Whitney did not become ascertainable until Whitney filed its suit for breach of contract. Accordingly, the trial court was correct in awarding legal interest from the date of judicial demand.
The judgment of the trial court is affirmed.
AFFIRMED.