STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-744


PAMELA RAFFIELD WATKINS

VERSUS

SANDRA SCHEXNIDER


**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-17983
HONORABLE ARTHUR J. PLANCHARD, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Billy Howard Ezell, J. David Painter, and Shannon J. Gremillion, Judges.

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.


Kevin Joseph Koenig
Raggio, Cappel, Chozen & Berniard
P. O. Box 820
Lake Charles, LA 70602-0820
(337) 436-9481
Counsel for Plaintiff/Appellant:
Pamela Raffield Watkins

Jonathan Hadley Fontenot
Attorney at Law
P. O. Box 4407
Lake Charles, LA 70606
(337) 564-4378
Counsel for Defendant/Appellee:
Sandra Schexnider

**GREMILLION, Judge**.

The plaintiff, Pamela Raffield Watkins, appeals the judgment in favor of the defendant, Sandra Schexnider, denying her claim for specific performance of delivery of immovable property located in Cameron Parish. For the following reasons, we affirm in part, reverse in part, and render.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2007, Watkins filed a petition for specific performance urging that Schexnider transfer title to her for a certain piece of property located in Cameron Parish. Watkins claimed that the conditions of the purchase agreement had been fulfilled and she was entitled to demand specific performance of the agreement.

Schexnider answered the petition, in proper person. In the answer she stated multiple times that the sale was of the house only and not the land on which it was located. Thereafter, she filed a motion a for summary judgment. Watkins filed a first supplemental and amending petition claiming that the "discussion, negotiations and representations" between she and Schexnider were such that the purchase included the land and that in light of her answer, Schexnider was guilty of fraud and misrepresentations in her negotiations for the sale of the property.

Following a November 2008 trial, the trial court denied Watkins' claim for specific performance but awarded Watkins $4,200 for overpayments under the "Home Purchase Agreement." Watkins now appeals.

## ISSUES

Watkins assigns as error:

1.  The trial court's failure to consider parol evidence to determine the true object of the buy sell agreement and to enforce the agreement.

1

2. Alternatively, the trial court erred in failing to find Schexnider liable for fraud and misrepresentation which vitiated consent and supports rescission of the entire contract.

3. The trial court erred in failing to award her reasonable damages and attorney fees.

## DISCUSSION

The contract entered into between Watkins, as the buyer, and Schexnider, as the seller, states:

**Home Purchase Agreement**

I Sandra Schednider [sic] agree to let Pam Raffield live in my house at 141 Welch Drive, Hackberry, Louisiana. Pam Raffield agrees to pay the following $350.00 per month to Beneficial Finance until note is paid in full. Then the house will be hers. She also agrees to maintain the Farm Bureau Homeowners Insurance that presently insures the property. Pam Raffield agrees to handle any normal homeowner expenses.

If Pam fails to pay note she will be asked to vacate the house within 30 days at no cost to Sandra. If anything happens to Sandra Schexnider, Pam will continue to pay Sharon Vilardi, Sandra's sister, with the same agreement.

The agreement was signed by the parties and notarized June 27, 2000. Watkins regularly paid the note and insurance. The home was destroyed following Hurricane Rita.

The trial court, in its written reasons for judgment, found no evidence of fraud or deceit. It further found that the agreement, a private act executed by both parties, could not be controverted by parol evidence to vary, add to, or contradict the terms of the contract. The trial court found that the clear wording of the contract indicated that Watkins was purchasing the house only. The trial court further found that, pursuant to the contract, once the mortgage was satisfied by the insurance proceeds, Watkins was no longer under any obligation to continue paying the monthly

2

$350 note.  Thus, it refunded her $4,200.

## PAROL EVIDENCE

Louisiana Civil Code Article 1848 states:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.

Although the general rule is that parol evidence will not be allowed in interpreting a contract, it has been allowed in many instances in order to discern the intention of the parties in contracts to sell immovable property.  A panel of this court recently summarized the pertinent law regarding contract interpretation in *CLK Co., L.L.C. v. CXY Energy, Inc.,* 07-834, pp. 8-10 (La.App. 3 Cir. 12/19/07), 972 So.2d 1280, 1286-87, *writs denied*, 08-0140, 08-0207 (La. 3/14/05), 977 So.2d 932, 937(citations omitted):

> Whether a contract is ambiguous is a question of law.  Appellate review of a question of law simply requires the appellate court to determine whether the trial court's conclusion was correct.

> The goal of contract interpretation is to determine "the common intent of the parties." La.Civ.Code art. 2045.  The intent of the parties to a contract must be determined in accordance with "the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical basis to the instrument in its entirety."  When the words of a contract are clear, explicit, and lead to no absurd consequences, the contract must be interpreted within its four corners and cannot be explained or contradicted by parol evidence.  However, when a word in a contract is not clear, testimony or other evidence may be considered to determine the parties' intent and interpret the contract. . . . [This] rule applies to contacts involving immovable property.

> "The words of a contract must be given their generally prevailing meaning," and "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La.Civ.Code art 2047.  Additionally, "[w]ords susceptible of different meanings must be interpreted as having the meaning that conforms to

3

the object of the contract." La.Civ.Code art. 2048. Pursuant to La.Civ.Code art. 2049, a "provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."

Generally parol evidence will not be allowed to "wholly identify the immovable." *City Bank and Trust of Shreveport v. Scott,* 575 So.2d 872, 873 (La.App. 2 Cir. 1991). *See also Young v. Tolintino*, 44,631 (La.App. 2 Cir. 12/2/09), __So.3d __. Parol evidence will be allowed only when the document sufficiently renders the title discernible from the writing and not essentially from parol evidence. *Id.* The description should sufficiently distinguish the property in question "from other properties so as to allow the conclusion that the mutual or common intent of the parties to the writing was to deal with the particular property and not another property of the same kind or quantity." *Id.*

There is no doubt that the particular property in question is located at the municipal address of 141 Welch Drive in Hackberry, Louisiana. However, the "Home Purchase Agreement" is ambiguous as to the parties' intent regarding the underlying land on which the home sits.

> A contract is considered ambiguous on the issue of intent *when it lacks a provision bearing on that issue* or when the language used in the contract is uncertain or is fairly susceptible to more than one interpretation. These rules are applicable even to contracts involving rights in immovable property[.]

*Blanchard v. Pan-OK Prod. Co., Inc.,* 32,764, pp. 7-8 (La.App. 2 Cir. 4/5/00), 755 So.2d 376, 381, *writ denied*, 00-1297 (La. 6/23/00), 765 So.2d 1043 (emphasis added) (citations omitted).

Admittedly, the contract itself refers to the "home" and "house" multiple times.[1] However, it references "the property" in terms of maintaining an insurance

---

[1]We note that the house/home in question is not a mobile home.

4

policy. The agreement was drafted by a lay person. Both parties to the contract have only high school educations. The very informal nature of the agreement lends to the average person's understanding that the inclusion of a municipal address ("141 Welch, Drive, Hackberry, Louisiana") implies the sale of the house and land on which it sits. The fact that Schexnider, the person who wrote the contract, is claiming that the agreement only conveyed the house, yet failed to put any such provision in the contract, can only be interpreted as ambiguous. It seems clear that if a party intends to sell only a house and not the land on which it sits, she would so note and provide for the details of the manner in which the underlying land is to be used. Otherwise, the home buyer is left in a quandary of having no idea what the terms of the land rental agreement is, such as when it begins, the cost, the limitations on the land, and various other matters pertaining to use of another person's land. This situation surely leads to absurd consequences as it leaves a buyer susceptible to the landowner's whim and further leads to instability of transactions involving immovables.

Accordingly, we find that parol evidence should have been allowed to determine the true intent of the parties regarding the underlying land. We now consider the evidence adduced at trial.

Watkins testified that, as of the time of trial, she had resided in the home for eight years. Watkins testified that Schexnider always indicated that the sale included the house, its contents, and the land. The house itself was very modest and in need of repair. Watkins testified that she spent several weeks clearing out the house and making it suitable for living. She stated that Schexnider walked her around the property indicating the boundary lines. Watkins stated that Schexnider always indicated that the sale included the land and that she would have never purchased a

5

home that sat on someone else's land.

Watkins stated that the agreement entailed monthly payments of $350 that totaled approximately $25,000 and payment of insurance premiums which were approximately $400 per year. Watkins testified that she paid Schexnider directly $350 per month, although Beneficial Finance Company was the holder of the note. Watkins testified that she paid $350 every month from June 2000 through August 2007. She said that the house was completely destroyed following Hurricane Rita's landfall in September 2005, but that she and her husband returned to the property the following February and lived in a FEMA trailer. She testified that she and her husband began repairing the property. She estimates that they spent approximately $15,000 repairing the property, but could only provide $9,000 worth of receipts. Pictures of the remodeled barn that Watkins converted into a living area were admitted into evidence.

Schexnider testified that she offered Watkins a rent-to-own arrangement. She admitted that the showed her the boundaries of the property line. She further admitted that she did not think that she ever conveyed to Watkins that the land did not go with the house. She admitted that she never told Watkins that she would be able to charge her rent for the land once Watkins owned the house. She admitted to drafting the rent-to-own contract. Schexnider testified that she did not mean to fool Watkins but admitted to not disclosing that the land was not included. Schexnider testified that she mortgaged the property to pay off some debt incurred during her divorce and that she just wanted to get out from underneath the note.

Schexnider testified that Watkins never missed a monthly payment and had paid $2,100 for insurance premiums up until the time the house was destroyed.

Schexnider said that following the storm, insurance paid her $17,394 which Beneficial Finance accepted as full payment of the mortgage. Schexnider admitted that she refused to disclose this information to Watkins and that the agreement she entered into with Watkins indicated that when the note was paid in full, the house would belong to Watkins. Schexnider testified that she continued accepting Watkins' monthly payments even though the mortgage was satisfied and the house had been destroyed nine months prior. She stated that the checks she cashed often noted "rent to own house and property."

Marla Raffield, Watkins' daughter-in-law, testified that she was present the day that Schexnider pointed out the whole property line. Raffield said that Schexnider indicated a survey would be done once the land was paid for so that Watkins could "verify her land with the court." Raffield said that Schexnider never indicated that she was only selling the house.

Having reviewed all of the evidence, we are certain that, at the time Watkins and Schexnider confected the "Home Purchase Agreement" the land was included as part of the sale. Schexnider's own testimony that the she never informed Watkins that the sale did not include the land is, by far, the most telling. It seems Schexnider regretted conveying the property to Watkins once the "note was paid in full" as she did not expect extinguishment of the mortgage due to the destruction caused by Hurricane Rita. However, she confected the agreement and Watkins is now the rightful owner of the land and the buildings that sit upon it.

Pursuant to Louisiana Code of Civil Procedure Articles 1919 and 2089 judgments and decrees pertaining to immovable property are required to describe the property with particularity. The only legal description of the property in the record

7

is a 1997 donation executed by Schexnider's sister to Schexnider of her one-half interest in the property. That description reads as follows:

> Lot Three (3) of Prairie View Subdivision, a subdivision of the West 5 acres of the West 40 acres of Section Forty-two (42), Township Twelve (12) South, Range Ten (10) West, Parish of Cameron, State of Louisiana.

### FRAUD/ ATTORNEYS FEES/DAMAGES

These assignments of error are rendered moot insofar as we have found that the original agreement included the land. We decline to award Watkins' claims for attorneys fees and damages.

### CONCLUSION

We render judgment in favor of the Plaintiff-Appellant, Pamela Raffield Watkins and order specific performance in that title to the aforementioned property, including the land and buildings thereon, be conveyed to Watkins. We affirm that portion of the trial court's judgment awarding Watkins $4,200 for overpayments. All costs of this appeal are assessed against the Defendant-Appellant, Sandra Schexnider.

### AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.