## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-27

EVELYN ANDERSON, ET AL.

VERSUS

MORENO'S AIR CONDITIONING, INC., ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2012-386
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

## JOHN E. CONERY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and John E. Conery, Judges.

**AFFIRMED.**

**William B. Monk**
**Lynsay M. Fontenot**
**Stockwell, Sievert,Viccellio, Clements & Shaddock, L.L.P.**
**Post Office Box 2900**
**Lake Charles, Louisiana 70602**
**(337) 436-9491**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
      **Moreno's Air Conditioning, Inc.**
      **Willie M. Moreno**
      **Dora E. Moreno**

**E. R. Robinson, III**
**E. R. Robinson, III, L.L.C.**
**1800 Ryan Street, Suite 107**
**Lake Charles, Louisiana 70601**
**(337) 433-9535**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Evelyn Anderson, Provisional Administratrix of the Estate of Fred M.**
**Moreno, and Evelyn Anderson, Independent Executor of the Estate of**
**Elsie Mae Savant Moreno**

**CONERY, Judge.**

Evelyn Anderson ("Evelyn") appears on behalf of her deceased parents, Fred and Elise Moreno, in the capacity of the succession representative of their Estates ("the Estates").[1] Evelyn appeals the trial court's judgment denying the Estates' claims for pre-petition interest on the court's $75,000.00 award for unpaid back rent against Moreno's Air Conditioning, Inc. ("MACI"). Neither party appeals the amount of the award, but Evelyn appeals the failure of the trial court to render judgment in solido against Willie and Dora Moreno individually as co-owners of the property located at East Napoleon Street in Sulphur, Louisiana ("Property"). Evelyn also appeals the trial court's denial of the Estates' claim for damages to the Property, in addition to the Estates' claims for fraud, discovery sanctions, and attorney fees against both MACI and Willie and Dora Moreno, individually.

After a trial on the merits, the trial court found in favor of the Estates against MACI only and awarded unpaid back rent to the Estates from 2001 to February 1, 2012, in the amount of $1,000.00 per month for a total amount of $75,000.00 with interest from the date of judicial demand. All other claims made by Evelyn on behalf of the Estates were denied by the trial court. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

This case encompasses complex issues involving closely held family business enterprises. We adopt as our own the following pertinent portions of the factual and procedural history of this case, as contained in the trial court's March 4, 2013 reasons, rendered after a two day bench trial and the trial court's review of

---

[1] On June 4, 2012, Louis Norman Moreno was discharged as a succession representative for the Estate of Fred M. Moreno, and Evelyn Anderson was appointed as the Provisional Administratrix for the Estate of Fred M. Moreno.

post-trial memoranda. In the trial court's reasons, Dora is referred to as "Patsy."

Thus, Willie and Dora Moreno are referred to as "Willie/Patsy" in the quoted trial

court reasons and will be referred to as such in our opinion.

Moreno's Air Conditioning, Inc. (MACI) is a family owned business founded by Fred Moreno and operated for years by him and his brother, Willie Moreno. MACI operated from 1721 East Napoleon Street in Sulphur, Louisiana since its inception in 1968. This property was owned by Fred and his wife, Elsie, until 1983 when Willie and his wife, Patsy, became 50% co-owners of the property. Also at this time, shares in MACI had the same ownership percentages -50% - Fred/Elsie and 50% - Willie/Patsy. Fred retired in 1998, at which time the Fred/Elsie MACI shares were gifted to their son, Kenneth Moreno, and Willie/Patsy's shares were reduced to 25% and their son, Allen Paul Moreno, became a 25% shareholder.

Elsie passed away in 2000 and her daughter, Evelyn Anderson, was appointed executrix of Elsie's estate. Fred passed away in 2008 and Evelyn became the executrix of his estate, but had held his power of attorney since 2006.

This litigation arises out of the fact that although MACI is a distinct legal entity from its owners, and its owners had distinct roles as corporate managers and landowners/lessors, these distinctions were ignored for decades. This arrangement worked well until the owners, and their interests, changed.

MACI operated at the East Napoleon location at all relevant times under a verbal month-to-month lease. There are no notes, corporate minutes or other documentation to reflect any understandings at any time regarding rent, maintenance or other common lessor/lessee issues. By 2009, the relationship between Evelyn Anderson and MACI's management had deteriorated to the point that MACI quit paying any rent whatsoever to the landowners/lessors. This eventually led to the filing of Suit No. 2011-1882, styled "Petition for Partition of Co-owned Property with a Demand for Accounting Reimbursements" and a later eviction action by the estates against MACI.

An Act of Partition among the parties dated January 23, 2012 resolved the partition issues in this case and memorialized the following exchange: Camilyn Apartments and Moreno's Air Conditioning property at 1721 East Napoleon Street, Sulphur, Louisiana in exchange for the Moss Bluff Lumberyard. Among other things, the partition states: "The said properties are equivalent in value, considering the percentages of ownership of the property partitioned herein." The Act of Partition also provides:

The said parties do hereby reserve to themselves, their heirs and assigns, all claims for damages for an accounting, all other claims for damages, or other claims, accruing during or arising from or relative to their co-ownership of the properties partitioned herein. However, each of the parties to this partition agreement waives and relinquishes in perpetuity any claim or causes of action to rescind or vacate this partition and exchange agreement and the transfers of property herein made for any reason including but not limited to failure of consideration or failure to pay any indebtedness assumed by either, and each of the parties hereby also waives any and all rights under any resolutory conditions relative thereto, and reserving to each only their right to a personal cause of action against the other for any breach thereof.

Suit No. 2012-386 was filed on January 31, 2012 and styled "Petition for Unpaid Rent for an Accounting, Damages, and Reimbursements." This suit seeks unpaid rent dating back to 2000 in the amount of $91,661.00, damages to the property improvements in the form of deterioration above normal wear and tear totaling $238,354.34 (much of it allegedly caused by Hurricane Rita), loss of rental opportunity due to the Plaintiffs' alleged inability to find a new tenant because of the property's poor condition and attorneys' fees based on fraud and/or La. C.C.P. art. 1472 (discovery sanction).

## ASSIGNMENTS OF ERROR

The Estates assert the following six assignments of error on appeal:

1. The Trial Court erred by failing to award pre-[p]etition interest on rent.

2. The Trial Court erred by dismissing all other claims for damages against all Defendants.

3. The Trial Court erred by dismissing claims for damages against the co-owners, Willie and Dora Moreno.

4. The Trial Court erred by dismissing claims for fraud against the Defendants.

5. The Trial Court erred by refusing to allow evidence that showed fraud in this case and a general pattern or practice toward Plaintiffs.

6. The Trial Court erred by failing to award Attorneys' Fees.

*Standard of Review*

The proper standard of review is whether the trial court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong. *Gibson v. State*, 99-1730 (La. 4/11/00), 758 So.2d 782, *cert. denied,* 531 U.S. 1052, 121 S.Ct. 656 (2000). The supreme court's two-part test for appellate review of a factual finding requires: "1) The appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and 2) The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous)." *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, DOTD*, 617 So.2d 880 (La.1993).

However, statutory interpretations are questions of law. *Shell v. Wal-Mart Stores, Inc.,* 00-997 (La.App. 3 Cir. 3/21/01), 782 So.2d 1155, *writ denied*, 01-1149 (La. 6/15/01), 793 So.2d 1244. Although a reviewing court defers to a trial court's reasonable decision on a question or matter properly within the trial court's discretion, if the trial court's decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983).

*Assignment of Error One*

The Estates contend that the trial court erred in awarding only post-petition interest from the date of judicial demand on the $75,000.00 awarded for unpaid back rent. In its reasons denying appellants claim for pre-petition interest, the trial court stated:

> Plaintiffs also seek interest on these past due amounts. The Court finds that interest was never intended to be a component in the

4

rent calculation between the parties. The lessee is entitled to judicial interest only from the date suit was filed.

MACI and Willie/Patsy argue the application of the case of *Teledyne Movible Offshore, Inc. v. C & K Offshore Co.*, 376 So.2d 357 (La.App. 3 Cir. 1979). In *Teledyne*, the court distinguished interest due in a case sounding in tort and one sounding in contract and stated, "interest is recoverable on debts arising ex contractu from the time they become due, unless otherwise stipulated. LSA-C.C. Art. 1938." *Id*. at 359. *Teledyne* was decided prior to a revision of the civil code, which included former La.Civ.Code art. 1938, now a part of La.Civ.Code art. 2000, effective July 3, 1985. Louisiana Civil Code Article 2000 states in pertinent part:

> When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500.

The Estates urge that La.Civ.Code art. 2000 and La.Civ.Code art. 1921 support its argument for pre-petition interest. Louisiana Civil Code Article 1921 (emphasis added) provides, "The court shall award interest in the judgment as prayed for **or as provided by law**." The Estates prayed for "legal interest from the date each payment was due, until made."

A review of the testimony and documentation in the record supports the trial court's determination that "interest was never intended to be a component in the rent calculation between the parties." The trial court, in conducting its extensive review of the past business dealings between the parties, determined that the closely held family business operated for decades with "blurred lines" not only between the individuals who owned a percentage of MACI, but also the property

5

owners and MACI. In the following colloquy with counsel at trial, the trial court succinctly states its frustration with this situation:

> But when you want to confuse the parties, either side, when it's handy, you do. When you want to – when you want to distinguish the parties, the individuals from the corporations, you do, when it's convenient. Both sides are guilty of that. But at the end of the day, we're dealing with a closely held family corporation that blurred the lines for 40 or 50 years, and that's – you know, that's why we're here is because the lines are so blurred. That's the way people do things in a family business.

The trial court specifically found that there was no written agreement between the parties concerning the terms of the rental of the Property and stated, "MACI operated at the East Napoleon location at all relevant times under a verbal month-to-month lease. There are no notes, corporate minutes or other documentation to reflect any understandings at any time regarding rent, maintenance or other common lessor/lessee issues."

Louisiana Civil Code Article 2000 allows damages in the form of interest "for delay in performance . . . on that sum from the time it is due." The evidence in the record and the trial court's ruling on the issue of unpaid back rent reflect that there was never a specific due date for payment of rent, as payments were erratic at best. Likewise, the amount of rent due was also in dispute until the actual sum of the monthly rent was determined at trial as $1,000.00, and not $500.00per month as urged by the appellees.

*Whitney Nat. Bank of New Orleans v. Poydras Center Assoc.*, 557 So.2d 422 (La.App. 4 Cir. 1990), affirmed a trial court's award of judicial interest from the date of judicial demand. In *Whitney*, the court stated, "the determination of when legal interest begins to run turns upon when the existence of the debt becomes certain. The scope of the PCA's [Poydras Center Association] obligation to

Whitney did not become ascertainable until Whitney filed its suit for breach of contract. Accordingly, the trial court was correct in awarding legal interest from the date of judicial demand." *Id.* at 427. In *Helena Chemical Co. v. Nichols*, 96-856, p. 2 (La.App. 3 Cir. 1/29/97), 695 So.2d 1000 (per curiam), this circuit cites *Whitney* for the proposition that interest should be awarded pursuant to La.Civ.Code art. 2000, based on an agreement by the parties for "an annual interest rate that would be paid for delay in performance (18% per annum from the date the payments were due which was 30 days from the date of each monthly statement)." Here, there was no agreement as to the amount of rent, the date it was due, how much, if any, back due rent was owed, and no history indicating that interest had ever been contemplated on rental payments.

For the forgoing reasons, we find the facts of this case do not support an award of pre-petition interest to the Estates pursuant to La.Civ.Code art. 2000. We therefore affirm the trial court's determination that interest was "never intended to be a component in the rent calculation between the parties." Thus, this assignment of error is without merit.

*Assignment of Error Two*

The Estates raise three separate issues in assignment of error two: the trial court erred in finding that MACI was not required to use the total amount of insurance proceeds received to repair the Property;[2] the trial court erred in failing to award damages for the condition of the Property when it was vacated by MACI

---

[2] Following Hurricane Rita, an insurance payment was made to MACI in the amount of $50,399.93, and MACI spent $20,072.78 of those proceeds on repairs to the Property. The Estates' claim that MACI was required to spend all of the insurance proceeds to make proper repairs to the Property.

in February 2012; and the trial court erred when it failed to award any damages for loss of rental opportunity due to the condition of the Property.

In its ruling under the heading "**Damages to the property**[,]" the trial court addresses issues one and two of assignment of error two, as well as the implications of the Act of Partition on the Estates' ability to sue for damages of any kind for the condition of the Property. The ruling further addresses under a separate heading issue three "**Lost rental opportunity**" as an additional claim for damages.

The record reflects that the trial court carefully reviewed the January 2012 Act of Partition and ultimately found it barred the Estates from claiming any further damages relating to the Property. The trial court stated:

> There is also the issue of the Act of Partition agreed to and filed of record only days before the Plaintiffs initiated the 2012 suit. It is entirely inconsistent with the intent reflected in that document that the Plaintiffs would turn around a few days later and sue the Defendants for damages to the improvements at East Napoleon Street in an amount that exceeded the value of the property. The fact that the parties to the partition were exchanging properties "equivalent in value" makes ambiguous the reservation of rights to seek "claims for damages" arising during the co-ownership, when those claims attack the very values agreed upon. The Defendants' argument is well taken that the Plaintiffs accepted David Bordelon's evaluation of the property at the time of the partition. The Act of Partition bars the Plaintiffs' claims for damages.[3]
>
> **Lost rental opportunity**
>
> In their pre and post trial memoranda, Plaintiffs have outlined this claim, but fail to explain their theory of when the loss began or the extent of their loss. The Court can guess that when MACI vacated the premises in 2012, Plaintiffs then had no opportunity to lease the premises because of the condition of the structure at that time. Again, however, the time needed to bring the structure up to a marketable condition was known or should have been known to the Plaintiffs

_____

[3] The Estates' Petition instituting this lawsuit was filed on January 31, 2012.

during the process of negotiating the partition agreement. Prior to vacating the premises, the Plaintiffs were content with the rental agreement in place.

The Act of Partition, signed in multiple counter-parts by the parties on January 23 and 24, 2012, was designed to equally partition three properties co-owned by Willie/Patsy and the Estates. The agreement provided that the Camilyn Apartments and Moreno's Air Conditioning property at 1721 East Napoleon Street, Sulphur, Louisiana, went to the Estates in exchange for the Moss Bluff Lumberyard's ownership reverting to Willie/Patsy.

The trial court specifically found that the partition agreement was ambiguous on the issue of whether the agreement was intended to fully resolve all issues related to the Property. The determination of ambiguity in a contract is a question of law. *Watkins v. Schexnider*, 09-744 (La.App. 3 Cir. 2/10/10), 31 So.3d 609, *writ denied*, 10-922 (La. 6/25/10), 38 So.3d 341.

Having determined that the Act of Partition was ambiguous as to the reservation of rights clause, the trial court properly allowed testimony to ascertain the true intent of the parties. *Beno's, Inc. v. Prof'l Gaming Tech*, 01-436 (La.App. 3 Cir. 10/03/01), 796 So.2d 856, *writ denied*, 01-2959 (La. 1/25/02), 807 So.2d 842. Based on the testimony and documentary evidence received, the trial court determined that the parties intended, by executing the Act of Partition, to preclude any further damage claims related to the Property by the Estates against both MACI and Willie/Patsy.

The trial court's factual finding that the Act of Partition was intended to preclude any further claim for damages related to the Property is supported by a series of email communications between counsel for the parties. The emails in

evidence reflect that, at the suggestion of counsel for the Estates, all parties relied on the property evaluations.

Counsel for the Estates hired Mr. Bordelon to appraise the Property and stated in an email, "We feel very comfortable with his valuations. He was aware of the potential problems with all the properties." It is also significant that the Act of Partition was drafted by counsel for the Estates.

Evelyn, as executrix of the Estates, testified that she was aware of the problems with the Property during the negotiations, as she had access to the Property. She failed to include in the value assigned to the Property by Mr. Bordelon any "damages" for the alleged needed repairs to the Property. In addition, Evelyn, on behalf of the Estates, refused to have an environmental assessment of the fuel storage tank on the Property, despite the urging of the appellees. It is worth noting that the Moss Bluff property that Willie/Patsy received in the transaction had similar problems with a fuel storage tank.

We find that, based on the testimony and evidence presented in connection with the intent of the parties, the trial court correctly determined that the Act of Partition was intended to preclude any further damage claims by the Estates related to the Property. We pretermit as moot any further discussion of the remaining issues in assignment of error two seeking additional damages for the Property. Assignment of error two has no merit.

### Assignment of Error Three

In assignment of error three, the Estates urge that the trial court erred in failing to assess the award for unpaid back rent against Willie/Patsy individually for their alleged mis-management of the property as 50% co-owners. The award

10

for $75,000.00 in unpaid back rent was rendered against MACI only, and the amount of that award has not been appealed.[4]

In *Campbell v. Pasternack Holding Co., Inc.*, 625 So.2d 477, 480 (La.1993) (citations omitted), the supreme court held that there was no duty for co-owners, such as Willie/Patsy, to agree with other co-owners, in this case Evelyn on behalf of the Estates, about the use of the property:

> The need to partition stems from the inconvenience of co-management, namely the requirement of unanimous consent of co-owners in managing commonly held property. With certain exceptions, each owner has the right to oppose the use of the property by the other. Consequently, co-owners who cannot agree on the use of the property are by the Civil Code specifically afforded the right to seek partition. Needless to say, then, partition is favored under Louisiana law and this Court's jurisprudence.

Considering the Act of Partition between the parties and applying *Campbell*, there is no legal basis to impose individual liability on Willie/Patsy as co-owners of the Property for the award for unpaid back rent in favor of the Estates against MACI.

As previously discussed, the trial court's determination to award unpaid back rent against MACI only was bolstered by the "blurred lines" under which the business of the closely held family corporation was conducted. Thus, we find assignment of error three to be without merit.

### Assignments of Error Four, Five, and Six

The final three assignments of error urged by the Estates involve the denial by the trial court of the Estates' claim of fraud, and attorney fees for both fraud and discovery abuse by the appellees pursuant to La.Code Civ.P. art. 1466, *et seq.* In

---

[4] At oral argument, counsel for the defendants/appellees indicated that the judgment for unpaid back rent has been fully satisfied by MACI, and the issue is now moot. We will nevertheless address the issue.

11

connection with the allegations of fraud, the Estates also urge that the trial court erred in excluding evidence at trial pursuant to La.Code Evid. art. 404(B) relating to Willie's failure to communicate with Evelyn about other co-owned businesses.

The record reflects that on December 27, 2012, the Estates filed a reconventional demand alleging fraud. The Estates claimed that MACI, and/or Willie in conjunction with MACI, committed fraud by claiming an increase in MACI's monthly expenses to offset rental payments and avoid paying rent to the Estates. Prior to trial, the trial court granted the appellees' exception of no cause of action, dismissing the Estates' initial claim for fraud. The trial court then granted the Estates the option to amend their pleadings to attempt to state a cause of action for fraud.

In response to the trial court's instructions, the Estates amended their petition, once again claiming fraud and seeking damages in the form of "market rent." The amended claim was based on the alleged misrepresentations of Kenneth Moreno ("Kenneth"), then Manager, co-owner of the stock of MACI, and Evelyn's brother, that MACI intended to make up the unpaid back rent and did not do so. Kenneth claimed that only $500.00 per month in unpaid back rent was due to the Estates, and because the rent had been overpaid in the past, no back rent was due.

Fraud is defined in La.Civ.Code art. 1953 as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

In support of the proposition that attorney fees should be awarded for the alleged fraud of Kenneth and Willie, the Estates urge the application of the recent supreme court case of *Stutts v. Melton*, 13-557, (La. 10/15/13) 130 So.3d 808. The

Louisiana Supreme Court in *Stutts* allowed attorney fees to the Stutts based on fraud pursuant to La.Civ.Code art. 1958.[5] The Stutts did not seek rescission of the entire purchase agreement for their home, but instead only sought the value of replacement of the roof. We find *Stutts*, which involved a purchase agreement, is not applicable to this case based on the trial court's determination that the relationship between the Estates and MACI was "under a verbal month-to-month lease." This case is governed by the long line of cases in which "Louisiana courts have long held that attorney fees are not allowed except where authorized by statute or contract." *Stutts*, 130 So.3d at 814.

Kenneth's testimony supports the trial court's determination that his actions relating to his discussions with Evelyn concerning the unpaid back rent did not "rise to the level of fraud." The trial court stated:

> Kenneth was quite straight-forward in his testimony that he told his sister that the estates would be "paid up" eventually, and he did so as late as 2009. The only issue is whether Kenneth meant rent of $500 or $1,000 per month. For the reasons noted above, the preponderance of the evidence weighs clearly in favor of the $1,000 a month rate. Furthermore, if one accepts Willie's testimony that Fred set the rent unilaterally and changed it without telling anyone, Kenneth would not have known to tell Evelyn in 2009 and earlier that "paid up" meant at a rate of $500 a month. To conclude otherwise would be to find Kenneth guilty of fraud for giving false assurances to Evelyn. Again, it was not until 2011, and in the midst of litigation, that MACI alleged overpayments to the estates.
>
> It also cannot be overlooked that Kenneth and Evelyn are brother and sister. There is no evidence of animosity between these two; thus, when Kenneth told Evelyn the rent would be "paid up" she could feel assured this meant the $1,000 a month she had received on so many occasions.

Evelyn's allegations of fraud against Willie stem from his lack of communication on behalf of MACI with respect to the unpaid back rent after rental

---

[5] Louisiana Civil Code Article 1958 provides, "The party against whom rescission is granted because of fraud is liable for damages and attorney fees."

payments ceased in 2009, and from Kenneth and Willie's failure to discuss any of MACI's dealings with her. Fraud may also result from silence or inaction that is calculated to produce a misleading effect. La.Civ.Code art. 1953, Comment (b). "Two elements essential to establishing legal fraud are intent to defraud or gain an unfair advantage and a resulting loss or damage." *First Downtown Dev. v. Cimochowski*, 613 So.2d 671, 677 (La.App. 2 Cir. 1993), *writ denied*, 615 So.2d 340 (La.1993). In connection with the Estates' claims of fraud, the trial court specifically found:

> A fraud allegation is difficult to prove. While there has been much posturing in this case on both sides and some of the positions taken by Willie Moreno may seem implausible, the Court does not find the actions of Kenneth or Willie in regard to their management of the property or their positions regarding rent rise to the level of fraud.

Based on the record before us, we will not second guess the trial court's considered determination on the claim that the actions of Kenneth and Willie regarding the payment of rent to the Estates and the management of MACI did not "rise to the level of fraud." In making this determination, the trial court concluded that the silence of Willie was not intended to gain an "unjust advantage" over the Estates.

We affirm the trial court's finding that the Estates did not prove fraud, and hence, no damages or attorney fees based on fraud are owed. We affirm the trial court's ruling on this issue.

We also affirm the trial court's ruling concerning the admissibility of evidence pursuant to La.Code Evid. art. 404(B).[6] The trial court sustained an

---

[6] Louisiana Code of Evidence Article 404(B) states:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

objection and ruled that the evidence concerning Willie's failure to communicate with Evelyn with respect to other co-owned businesses was not relevant to the issue of fraud as to the Estates' claim for unpaid back rent. It was undisputed that Willie did not communicate with Evelyn concerning the unpaid back rent; and it was undisputed that there was no payment of rent after 2009. Therefore, any other dealings between Willie and Evelyn concerning other co-owned properties were not relevant to the issue of fraud for the nonpayment of back rent by MACI or by Willie in his capacities as owner of stock in MACI and co-owner of the Property. We agree with the trial court's evidentiary ruling on this issue and find no abuse of the trial court's vast discretion. *Bellsouth Telecomm., Inc*. v. *City of Lafayette*, 05-1478 (La.App 3 Cir. 1/5/06), 919 So.2d 844.

In its reasons, the trial court further addressed the issue of attorney fees based on proving at trial matters denied by the Appellees in response to requests for admissions pursuant to La.Code Civ.P. art. 1466,[7] and stated:

> The Court has previously awarded sanctions in favor of the Plaintiffs because of the Defendants' less-than-forthcoming discovery responses. The Plaintiffs now complain of having to go to trial to

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

[7] Louisiana Code of Civil Procedure Article 1466 provides:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Articles 1422 through 1425 set forth in the request or of the truth of any relevant matters of fact, including the genuineness of any documents described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying. The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the petition upon that party.

prove that: MACI made improvements on the property, the rent was $1,000 per month and interest payments were made on the Willie Moreno promissory note from 1993 to 2000. For example, in response to Request for Admission No. 7, Defendants admitted no payments were made by Willie Moreno on the note; however, it was later proven that Willie had made interest payments, clearly a payment on the note. Likewise, Defendants could not bring themselves to directly admit (or deny), as they must do, in response to Request for Admission No. 6 (Joint Exhibit C-3). Instead, the Defendants' response had qualifications, which qualifications were ultimately abandoned.

There is no place in the conduct of litigation for discovery responses that fail to err on the side of candor. However, in reviewing La. C.C.P. art. 1472,[8] the Court finds that some of these responses were "of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit." The Court exercises its discretion to not again award attorneys' fees, but not without reminding counsel of their professionalism obligation.

In regulating pretrial discovery, "Trial courts have broad discretion in ruling on discovery matters that are presented during the course of litigation, including the scope of discovery. Such discretion will not be disturbed on appeal absent a clear showing of abuse." *Trahan v. State ex rel Dep't of Health and Hosp.*, 04-743, p. 2 (La.App. 3 Cir. 11/10/04), 886 So.2d 1245, 1248-49 (citing *Moak v. Ill. Cent. R.R. Co.*, 93-783 (La.1/14/94), 631 So.2d 401) (other citations omitted). Finding no abuse of the trial court's broad discretion, we affirm the denial of attorney fees

---

[8] Louisiana Code of Civil Procedure Article 1472 states:

If a party fails to admit the genuineness of any document or the truth of any matter as requested under Article 1466, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that the request was held objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit.

as sanctions sought in connection with the Estates' claim of discovery abuse by the appellees.

## CONCLUSION

For the foregoing reasons, and after careful review of the record in this case, we conclude that there are no grounds for reversal or modification of the trial court's well-reasoned ruling, and we affirm the judgment in its entirety. All costs of this appeal are assessed to Evelyn Moreno Anderson, Succession Representative of the Estates of Fred M. Moreno and Elsie Mae Savant Moreno.

**AFFIRMED.**