VICTORY, J.
_JjWe granted this writ application to determine whether the New Home Warranty Act (“NHWA”), La. R.S. 9:3141 et seq., provides the exclusive remedy between a home builder and a purchaser of residen *810 tial property, where the builder failed to disclose known defects in the home in a Residential Property Disclosure Statement. After reviewing the record and the applicable law, we reverse the judgment of the court of appeal and hold that the purchasers are not limited to the provisions of the NHWA under the facts of this case.
FACTS AND PROCEDURAL HISTORY
Chad Melton was the builder of a residential home in Walker, Louisiana. Construction was completed in December of 2004. Chad and his wife, Lauren, (the “Meltons”) were the first occupants of the home and lived there for approximately nine months before selling the home to James and Lisa Stutts (the “Stutts”) on September 30, 2005. On September 26, 2005, in conjunction with the sale of the property, the Meltons gave the Stutts a Residential Property Disclosure Form in conformity with the Residential Property Disclosure Act, La. R.S. 9:3196 et seq. (the “RPDA”), which stated that there were no known defects in the roof. However, the Meltons had previously discovered color bleeding on the walls due to a defect in the 1¡¡roof and entered into a settlement agreement with the roofing manufacturer, Atlas Roofing Corporation, sixty days prior to selling the house to the Stutts for replacement of the roof. Pursuant to the settlement agreement, Atlas paid the Meltons $13,600.00 for a replacement roof.[1] Rather than replace the roof, the Meltons kept the money, cleaned the color bleeding on the walls and driveway, and installed gutters to prevent further color bleeding.
In the summer of 2006, the Stutts noticed color bleeding on the walls, which was determined to be the result of defective roofing materials. The Stutts contacted Atlas, who told them that the Meltons had previously discovered the defect and entered into a settlement agreement with them to pay for a replacement roof, which exhausted all rights under warranty against Atlas. The Stutts filed suit against the Meltons, claiming that the roofs defective condition was not apparent at the time of the sale, and that the Mel-tons committed fraud by not disclosing the defective condition of the roof in the Residential Property Disclosure Statement and by covering up the defective condition of the roof rather than replacing the roof. The | ¡¡Stutts’ suit against the Meltons prayed for the cost of replacing the roof, or the amount which the Meltons received in the settlement with Atlas, plus costs for additional repairs related to the defective roof, legal interest, and attorney fees.
*811 The Stutts filed a motion for summary judgment on their fraud claim, presenting undisputed material facts which they claimed proved the Meltons committed fraud under La. C.C. art. 1953. The Mel-tons opposed the motion, arguing that the NHWA provides the exclusive remedy for the Stutts. The trial court granted the Stutts’ motion for summary judgment, finding the Meltons liable to the Stutts under the RPDA. After a bench trial, the trial judge found the Meltons guilty of civil fraud and awarded damages of $15,503.55, plus $12,000 in attorney fees. The Mel-tons appealed and the court of appeal reversed both the summary judgment and the money judgment, finding that the Stutts’ sole remedy was provided by the NHWA and that any claims under the NHWA were untimely. Stutts v. Melton, 12-0438 (La.App. 1 Cir. 12/21/12), 2012 WL 6677905 [unpublished opinion]. Two judges dissented. We granted the Stutts’ writ application. Stutts v. Melton, 13-0557 (La.5/17/13), 118 So.3d 373.
DISCUSSION
The NHWA provides mandatory warranties for the purchasers of new homes in Louisiana. La. R.S. 9:3141. The specific mandatory warranties provided by the builder[2] to the purchaser are:
A. Subject to the exclusions provided in Subsection B of this Section, every builder warrants the following to the owner:
(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
U(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
(3) Five years following the warranty commencement date, .the home will be free from major structural defects[3] due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
La. R.S. 9:3144(A). La. R.S. 9:3146 provides a peremptive period of thirty days after the expiration of the appropriate time period provided in La. R.S. 9:3144 to enforce any warranty. An owner has a cause of action against the builder who fails to perform as required by the warranties for actual damages, including attorney fees and court costs arising out of the violation. La. R.S. 9:3149. However, the NHWA “provides the exclusive remedies, warranties, and peremptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply.” La. R.S. 9:3150. *812 Based on this exclusivity provision, the Meltons argue, and the court of appeal agreed, that the Stutts can have no other cause of action against them arising from the defective roof other than under the NHWA. Under the NHWA, the defective roof would amount to “noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards,” which is subject to a one-year warranty, and which must be brought thirty days from the expiration of the one-year period. La. R.S. 9:3144(A)(1) and 9:3146. Thus, the court of appeal found that the Stutts’ claim was perempted as it "was brought outside of that peremptive period.
IfiThe Stutts’ petition did not allege any claims under the NHWA, but instead claimed the Meltons were liable under the RPDA and for fraud. The RPDA applies to “the transfer of any interest in residential property, whether by sale, exchange, bond for deed, lease with option to purchase, or any other option to purchase, including transactions in which the assistance of a real estate licensee is utilized and those in which such assistance is not utilized.” La. R.S. 9:3197(A). The RPDA does not apply to “transfers of newly constructed residential real property, which has never been occupied.” La. R.S. 9:3197(B)(5). This was a sale of residential property, and while the property was newly constructed, it had been occupied by the builder, making the provisions of the RPDA applicable to the sale. If the Mel-tons had sold the property to the Stutts upon completion of the home and had never lived in it, they would not have had to comply with the RPDA.
Pursuant to the RPDA, “the seller of a residential real property shall complete a property disclosure document in a form prescribed by the Louisiana Real Estate Commission ... which discloses, at a-minimum, known defects in the residential real property.” La. R.S. 9:3198(A)(1). This form is known as the Residential Property Disclosure Statement. In completing the form, “[t]he seller shall complete the property disclosure document in good faith to the best of the seller’s belief and knowledge as of the date the disclosure is completed and signed by the seller ...” La. R.S. 9:3198(B)(1). The form contains a section entitled “Structure” and the seller must answer affirmatively if there are any defects in various parts of the house, including the roof. In the case of a newly constructed home that had been occupied, the purpose of requiring a Residential Property Disclosure Statement is so that the seller/builder can disclose any defects that he becomes aware of since occupying the house.
| (¡In this Residential Property Disclosure Statement, the Meltons stated that the roof was free of any defects.[4] A “known defect” is defined as a “condition found within the property that was actually known by the seller and that results in any of the following: (a) has a substantial adverse effect on the value of the property; (b) significantly impairs the health or safety of future occupants of the property; or (c) if not repaired, removed, or replaced, significantly shortens the expected normal life of the premises.” La. R.S. 9:3196(1). After a trial on the merits, the trial court found that the Stutts proved that the misrepresentation on the Residential Property Disclosure Statement regarding the condition of the roof had a “significant adverse effect on the value of the property.”
*813 The liability of the seller for lying on the Residential Property Disclosure Statement is expressed in the negative, as follows:
A seller shall not be liable for any error, inaccuracy, or omission of any information required to be delivered to the purchaser in a property disclosure document if either of the following conditions exists:
(1) The error, inaccuracy, or omission was not a willful misrepresentation according to the best of the seller’s information, knowledge, and belief.
(2) The error, inaccuracy, or omission was based on information provided by a public body or by another person with a professional license or special knowledge who provided a written or oral report or opinion that the seller reasonably believed to be correct and which was transmitted by the seller to the purchaser.
La. R.S. 9:3198(E). Though the RPDA provides that the seller is not liable for errors, inaccuracies, or misrepresentations that were not willful misrepresentations, it does not state the extent to which a seller is liable for willful misrepresentations. Thus, the 17Meltons argue that the RPDA does not provide a private cause of action under La. R.S. 9:3198(E) or by virtue of La. R.S. 9:3198(D), which provides:
A property disclosure document shall not be considered as a warranty by the seller. The information contained within the property disclosure document is for disclosure purposes only and is not intended to be a part of any contract between the purchaser and seller.
We disagree with the Melton’s argument. By specifically excepting from liability a seller who makes an error or omission that is not a willful misrepresentation, the only reasonable interpretation of that statute is that a seller who makes a willful misrepresentation is liable. Liability can be found in the fraud articles as the RPDA also provides that “[t]his chapter shall not limit or modify any obligation between buyers and sellers created by any other statute or that may exist in law.” La. R.S. 9:3200. As a sale of real estate is a contract, the law of contracts, including fraud, applies to this case by virtue of La. R.S. 9:3200.
Thus, while the NHWA “provides the exclusive remedies, warranties, and per-emptive periods as between builder and owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply,” the NHWA does not immunize a seller from other contract law provisions the seller is to follow in connection with the sale of the home. Further, as noted earlier, a Residential Property Disclosure Statement is not required with most newly constructed homes. La. R.S. 9:3197(B)(5) (the RPDA does not apply to “transfers of newly constructed residential real property, which has never been occupied”). However, where the builder has lived in the home and later sells it, the RPDA applies and the seller is required to fill out the Residential Property Disclosure Statement, disclosing any known defects that has arisen during the time period that lathe seller occupied the home.[5] Any action claiming the seller made a fraudulent misrepresentation on the statement is not a claim “relative to home construction” under La. R.S. 9:3150; it is a claim that the seller has knowingly misrepresented that the home has a quality which he *814 knows it not to have. In this case, a roof free from defects.
“Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.” La. C.C. art. 1953. “Fraud may also result from silence or inaction.” Id. The trial court found that by misrepresenting the condition of the roof on the Residential Property Disclosure Statement, “the Stutts have satisfied by a preponderance of the evidence the existence of fraud under Civil Code Article 1953.” Here, the Meltons knew about the condition of the roof, as they had made a previous claim that the roof was defective and needed to be totally replaced. After they were paid to have the roof replaced on the condition that they actually replace the roof, they did not. Instead, they made a knowing misrepresentation that the existing roof was free from any defects, and then covered up the evidence of the defect, i.e., the color bleeding on the walls. Thus, we find that there is a reasonable factual basis for the trial court’s finding that the Meltons committed fraud as defined by La. C.C. art. 1953.
The next issue concerns damages, specifically, whether the seller can be held liable for attorney fees in this case. Louisiana courts have long held that attorney fees are not allowed except where authorized by statute or contract. Sher v. Lafayette Ins. Co., 07-2441 (La.4/8/08), 988 So.2d 186, 201; Rivet v. State, Dept. of Transp. and Development, 96-0145 (La.9/5/96), 680 So.2d 1154; State, Dept. of Transp. and 9Development v. Williamson, 597 So.2d 439, 441 (La.1992).
Fraud vitiates consent, La. C.C.P. art. 1948, and thus is grounds for rescission. See La. C.C. art. 2031 (“A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made.”) As vitiation of consent is grounds for rescission, La. C.C. art. 1958 provides that “[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees.” Here, the Stutts are not seeking rescission of the sale of their home, although, under the facts of this case and the findings of the trial court, they would have been entitled to it. They are only seeking the replacement value of the roof; in effect, they are seeking rescission of the sale of the roof. Thus, the issue is, when fraud has been proven but the defendant chooses not to seek rescission of the entire sales contract, is he nonetheless entitled to attorney fees?
While La. C.C. art. 1958 allows attorney fees against a party “whom rescission is granted because of fraud,” it is the only code article that allows “damages” of any kind for fraud. There is no provision in the Civil Code for an award of damages where fraud is committed in the formation of a contract, but the plaintiff does not seek rescission of the contract. Although we have long held that attorney fees are not authorized unless provided by statute, this case is different in that no statute specifically provides damages for fraud in this case. Surely, the legislature did not intend the victim of fraud to go uncompensated for attorney fees, or for that matter, any damages at all, unless he seeks rescission of the entire contract. And, if La. C.C. art. 1958 is interpreted to mean that the plaintiff is only entitled to damages and not attorney fees, then the fraudulent defendant is essentially being treated as a good faith | mobligor, who is only liable for damages that were foreseeable at the time the contract was made. La. C.C. art. 1996. This is contrary to law as “[i]t should be clear that in Louisiana the liability of an *815 obligor who committed fraud in failing to perform his obligation, rather than just acting in bad faith, would, for greater reasons, be at least as extensive as the liability of an obligor in bad faith.” Saul Litvi-noff, 6 Louisiana Civil Law Treatise: The Law of Obligations, Part II, Putting in Default and Damages, § 5.20, p. 133 (1999). Further, in our view, the intent of the legislation providing attorney fees when the obligor has committed fraud is to punish the fraudulent conduct, regardless of whether the obligee seeks rescission of the contract. As Professor Litvinoff has pointed out, “the Louisiana Civil Code provides that when rescission of a contract is granted against a party because of his fraud, that party is liable for damages and attorney fees, which seems to intimate that such fees are not damages but something else, and in the context of such a serious wrong as fraud that something else sounds with penalty overtones.” Litvinoff, supra, § 12.30, p. 371.
Pursuant to La. C.C. art. 4, “[w]hen no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity.” “To decide equitably, resort is made to justice, reason, and prevailing usages.” La. C.C. art. 4. Comparable articles are found in the sales articles of the Civil Code. Particularly, the sales articles on redhibition provide that a seller who knows of a defect but fails to declare it is liable for return of the price paid plus interest, reimbursement of reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, damages and reasonable attorney fees. La. C.C. art. 2545. We note that the Revision Comments to La. C.C. art. 2520 provide “[t]he Articles on redhibition do not apply to hidden defects discovered in a new home governed by the New Home Warranty Act, R.S. 9:3141-3150.” La. C.C. art. [^2520 (Official Revision Comment (e) (1993)). However, as we have held, the NHWA does not provide the exclusive remedy to the Stutts because the Meltons also committed fraud in violating the RPDA, which does not fall within the NHWA. Another important provision of these sales articles is that they specify that “a buyer may choose to seek only reduction of the price even when the redhibitory defect is such as to give him the right to obtain rescission of the sale.” La. C.C. art. 2541. We also note that the comments to La. C.C. art. 2545 explain that “this provision [Article 2545] does not preclude an action for fraud against such a seller whenever the requirements of Art. 1953 are met.” La. C.C. art. 2545 (Official Revision Comment (a) (1993)). Thus, while this is not technically a claim for damages under La. C.C. art. 2545, the elements of the Stutts’ fraud claim are essentially the same, if not more egregious. Therefore, in order to provide an equitable remedy, it is reasonable and just to assume the legislature intended at least the same type of damages for fraud where rescission of the entire sale is not sought. Accordingly, we find that the Stutts are entitled to attorney fees in this case.
CONCLUSION
The NHWA provides the “exclusive remedies, warranties, and peremptive periods as between builder and owner relative to home construction,” but, when the new home is occupied by the builder for some time period before being sold, the builder/seller must also comply with the provisions of the RPDA. This requires the builder/seller to disclose of any known defects in the home, including those which he becomes aware of during his occupancy. Under the RPDA, the seller is liable for any willful misrepresentations on the Residential Property Disclosure Statement. A claim that the seller violated the provisions *816 of the RPDA is not a claim “relative to home construction,” but is a fraud claim. This liability is separate and apart from any | pliability that may arise under the NHWA. As the RPDA does not “limit or modify any obligation between buyers and sellers created by any other statute or that may exist in law,” a seller can be liable for fraud for violating the RPDA. In this case, the trial court found the Meltons committed fraud by making a willful misrepresentation of a known defect and this was not manifest error.
Regarding damages, La. C.C. art. 1958 provides that “[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees.” Pursuant to the findings of the trial court, the Meltons could have sought rescission of the sales contract, but they did not. They seek the cost of a new roof plus attorney fees. Although we have long held that attorney fees are not awarded unless authorized by statute or contract, this case is distinguishable in that the fraud articles do not address an award of damages for fraud at all where rescission of the contract is not sought. Thus, we resort to equity in determining what sort of damages are awardable in this case. We find that in mandating that a fraudulent party be liable for attorney fees in Article 1958, the legislature was attempting to punish the fraud, regardless of whether rescission is sought. Further, when the Stutts purchased this home, they were misled to believe that they were purchasing a new roof with a lengthy warranty and no known defects. In seeking the costs of a new roof, they are essentially asking for rescission of the contract as to the roof. In addition, the comparable articles on redhibition also award attorney fees where the seller “declares the thing has a quality that he knows it does not have ...” Accordingly, the Meltons are liable for damages for their fraud even though the Stutts are only seeking a new roof, and these damages include attorney fees.
|iaDECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the trial court judgment is reinstated. The case is remanded to the trial court for further proceedings regarding any additional attorney fees incurred since the time of that judgment.
REVERSED; TRIAL COURT JUDGMENT REINSTATED; REMANDED.
WEIMER, Justice, concurs and assigns reasons.

. The letter enclosing the settlement check for $13,600.00 from Atlas to Chad Melton stated:
Enclosed please find Atlas Roofing Corporation’s check in the amount of $13,600.00 for the full material and labor settlement of the above referenced claim. The settlement amount compensates for the tear off and replacement of the roof and is based on the corrected estimate submitted from LeBlanc Construction and Maintenance, L.L.C. Enclosed for your file is a copy of the corrected estimate.
When the roof is replaced, please have the roofer save 2 full size shingles that exhibit the rust staining. If the rust is not visible on the shingles, please take the samples from an area of the roof that has caused staining on the bricks, cement etc. Please call this office and a carton along with labels will be sent to you for the return of the shingle samples. You can reach this office at (800) 478-0258 from 8:00 am to 3:30 pm CST Monday through Friday.
Additionally, by endorsement of the enclosed check you have agreed to replace the shingles within three months. Upon notification that the shingles have been replaced, Atlas Roofing Corporation will have any staining on areas affected by the rust cleaned/corrected. If Atlas does not receive notification of the need to clean or correct any stained areas within this period, Atlas Roofing Corporation will have no obligation to clean or correct affected areas. (Emphasis added.)

. A "builder” is defined as "any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence.” La. R.S. 9:3143(1).

. A "major structural defect” is defined as "any actual physical damage to the following designated load-bearing portions of a home caused by failure of the load-bearing portions which affects their load-bearing functions to the extent the home becomes unsafe, unsanitary, or is otherwise unlivable: ... (h) roof framing systems.” La. R.S. 9:3143(5). The roof defect in this case did not involve "roof framing systems;” thus, the five year peremp-tive period would not apply.

. Specifically, after each part of the house, there are boxes to check for “Y," "N," or “NK.” The Meltons checked the "N” box after being asked if there were any defects in the roof.

. In fact, had the Meltons not occupied the home before selling it to the Stutts, the Stutts would have discovered the defect timely and gotten a new roof under the NHWA, along with attorney fees under La. R.S. 9:3149.