Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,802-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

RICHARD MURRAY AND                    Plaintiffs-Appellants
HEATHER DUKES WARD
MURRAY

versus

TERRILL CLARK BOSTWICK                Defendants-Appellees
AND DEBORAH KAY REED
BOSTWICK

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 599,188

Honorable Craig O. Marcotte, Judge

* * * * *

SHUEY SMITH, LLC                      Counsel for Appellants
By: Richard E. Hiller

DAVID L. WHITE                        Counsel for Appellees

* * * * *

Before COX, STEPHENS, and THOMPSON, JJ.

**THOMPSON, J.**

This matter arises from the purchase and sale of a residence which Plaintiffs, Richard and Heather Murray ("The Murrays"), assert contained defects which were concealed or not disclosed by Defendants, Terrill and Deborah Bostwick ("The Bostwicks"). Plaintiffs appeal from the trial court's judgment in favor of Defendants in which the court found that Plaintiffs failed to meet their burden of proof to establish: (1) that there was a willful misrepresentation of the truth in order to gain an advantage; (2) the elements of detrimental reliance; and (3) fraud. For the following reasons, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

In 2012, the Bostwicks placed their house on the market to sell through realtor Chuck Horne. On August 12, 2012, the Bostwicks filled out a Property Disclosure Statement ("the Statement") with the assistance of Mr. Horne. On May 10, 2013, the Murrays and Bostwicks entered in a Louisiana Residential Agreement to Buy or Sell ("the Agreement"). After two counteroffers, the parties agreed upon the purchase conditions, which included the condition that a home inspection be completed prior to closing the sale and that the sale would include a waiver of redhibition. Both parties signed page six (6) of the Agreement, which included an explanation that the home would be sold without any warranties in "as is" condition:

> SELLER and BUYER hereby acknowledge and recognize that the Property being sold and purchased is to be transferred in "as is" condition and further BUYER does hereby waive, relieve and release SELLER from any claims or causes of action for redhibition pursuant to Louisiana Civil Code Article 2520, *et seq.* and Article 2541, *et seq.* or for reduction of Sale Price pursuant to Louisiana Civil Code Article 2541, *et seq.*

Additionally, BUYER acknowledges that this sale is made without warranty of fitness for ordinary or particular use pursuant to Louisiana Civil Code Article 2524. SELLER and BUYER agree that this clause shall be made a part of the Act of Sale.

On May 31, 2013, American Dream Home Inspection Service issued an inspection report on the subject property. There were no issues noted on the inspection report with regard to pinhole leaks or improper grade of copper piping. On July 11, 2013, the parties executed a Cash Sale Deed ("the Deed") which also expressly stated that the home would be sold without warranties:

It is expressly agreed that the immovable property herein conveyed and all improvements and component parts, plumbing, electrical systems, mechanical equipment, heating and air conditioning systems, built-in appliances, and all other items located thereon are conveyed by Seller and accepted by Buyer "AS IS, WHERE IS," without any warranties of any kind whatsoever, even as to the meets and bounds, zoning, operation, or suitability of the property for the use intended by the Buyer, without regard to the presence of apparent or hidden defects and with the Buyer's full and complete waiver of any and all rights for the return of all or any part of the purchase price by reason of any such defects. ***Buyer acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the seller has made any direct, indirect, explicit or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Buyer has relied, concerning the existence or non-existence of any quality, characteristic or condition of the property herein conveyed.*** Buyer has had, complete and unlimited access to the property herein conveyed for all tests and inspection which Buyer, in Buyer's sole discretion, deems sufficiently diligent for the protection of Buyer's interests. Buyer expressly waives the warranty of fitness and the warranty against redhibitory vices and defects, whether apparent or latent, imposed by Louisiana Civil Code Articles 2520 through 2548, inclusive, and any other applicable state or federal law and the jurisprudence thereunder (emphasis added).

After moving into the home, the Murrays began to experience pinhole leaks in the pipes of the house. The Murrays hired plumbers and

construction companies to fix the damage caused by each of the leaks. In June 2016, the Murrays contacted Robert Brown Plumbing to complete an inspection of the pipes to determine the cause of the pinhole leaks. According to Mr. Brown, the wrong copper piping was installed in the house, and this was at least part of the cause of the pinhole leaks. It was the opinion of Mr. Brown that the only way to fix the pinhole leak problem was to replace all of the copper piping in the house.

On March 9, 2017, the Murrays filed suit against the Bostwicks claiming breach of contract, fraud, and detrimental reliance. This case was tried on July 31 and September 18, 2018. The trial court issued its written ruling on September 28, 2018, finding that the Murrays had failed to carry their burden of proof to establish: (1) that there was a willful misrepresentation of the truth in order to gain an advantage; (2) the elements of detrimental reliance; and (3) fraud. Judgment was signed on October 17, 2018, and the Murrays filed the instant appeal.

## DISCUSSION

Louisiana's Residential Property Disclosure Act, La. R.S. 9:3196 *et seq.* (the "RPDA"), *inter alia*, requires a seller of residential property to complete and deliver a property disclosure form as provided in La. R.S. 9:3198, which provides in pertinent part:

> (A)(1) The seller of residential real property shall complete a property disclosure document in a form prescribed by the Louisiana Real Estate Commission or a form that contains at least the minimum language prescribed by the commission.
>
> .   .   .
>
> (B)(1) The seller shall complete the property disclosure document in good faith to the best of the seller's belief and

3

knowledge *as of the date the disclosure is completed and signed by the seller*. If the seller has no knowledge or information required by the disclosure document, the seller shall so indicate on the disclosure statement and shall be in compliance with this Chapter.

.   .   .

(D)(1) A property disclosure document shall not be considered as a warranty by the seller. The information contained within the property disclosure document is for disclosure purposes only and is not intended to be a part of any contract between the purchaser and seller.

.   .   .

(E) A seller shall not be liable for any error, inaccuracy, or omission of any information required to be delivered to the purchaser in a property disclosure document if either of the following conditions exists:

> (1) The error, inaccuracy, or omission was not a *willful misrepresentation* according to the best of the seller's information, knowledge, and belief (emphasis added).

In the statement executed by the Bostwicks in the instant case, they indicated that their home's plumbing system and water piping were free of any defects. A "known defect" is defined as a "condition found within the property that was actually known to the seller and that results in any of the following: (a) has a substantial adverse effect on the value of the property; (b) significantly impairs the health or safety of future occupants of the property; or (c) if not repaired, removed, or replaced, significantly shortens the expected normal life of the property." La. R.S. 9:3196(1).

While the Murrays have urged three assignments of error, we note that the claims have some of the same elements. Thus, much of the evidence to prove (or disprove) these theories of recovery is the same.

4

**Willful Misrepresentation**

The Murrays contend the trial court erred in its factual findings that the Bostwicks did not knowingly and intentionally misrepresent the condition of the plumbing and piping in the home. The elements of a claim for intentional misrepresentation are: (1) a misrepresentation of a material fact; (2) made with the intent to deceive; and (3) causing justifiable reliance with resultant injury. *Benton v. Clay*, 48,245 (La. App. 2 Cir. 08/07/13), 123 So. 3d 212, citing *Kadlec Med. Center v. Lakeview Anesthesia Assocs.*, 527 F. 3d 412 (5 Cir. 05/08/08), *cert. denied*, 555 U.S. 1046, 129 S. Ct. 631 (2008).

An obligor is in bad faith if he intentionally and maliciously fails to perform his obligation. La. C.C. art. 1997, Revision Comment (b). The term bad faith means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives. *Benton, supra; Bond v. Broadway*, 607 So. 2d 865 (La. App. 2 Cir. 1992), *writ denied*, 612 So. 2d 88 (1993).

Our review of the record fully supports the trial court's findings that the Bostwicks did not knowingly and intentionally misrepresent the condition of the plumbing and piping in the home. The representations to which the Murrays refer to are checkmarks in the "N" or "no" column of the Statement regarding plumbing and piping defects. Pursuant to La. R.S. 9:3198(E), "a seller is not liable for errors, inaccuracies, or misrepresentations that were not willful misrepresentations," in a Property Disclosure Document. *Stutts v. Melton*, 13-0557 (La. 10/15/13), 130 So. 3d 808, 813. The Bostwicks testified that they had only experienced one

5

pinhole leak in the entire time they had lived in the home (approximately 15 years), they had the leak repaired by a plumber, and they had no more leaks or issues since. Additionally, the Bostwicks testified that they asked Mr. Horne whether they needed to disclose that leak on the Statement and he told them not to include it.

The Murrays also contend that the Bostwicks knew or should have known that the improper grade of copper piping was installed in the house. However, the Murrays presented no evidence that the Bostwicks had any idea that the improper copper piping was used. In fact, Mr. Bostwick testified that he requested an upgraded quality of copper piping be used throughout the house as opposed to what was typically installed in new construction homes at that time. Therefore, he would have had no reason to know that a different grade of copper piping was used in the home. Further, Robert Brown, the Murrays' plumbing expert, testified at trial that the grade of copper piping was but one factor in the cause of the pinhole leaks. According to Mr. Brown, the hard water in the Blanchard area also aided in the wear-down of the pipes and was likely one of the causes of the pinhole leaks. Years of trouble-free ownership was evidence of no deficiencies.

The Murrays continue to refer to "plumbing issues" experienced by the Bostwicks as evidence that they knew about the pinhole leaks. However, after review of the record, it appears that the "plumbing issues" to which the Murrays are referring were actually a series of stopped-up toilets and an overflowed bathtub caused by the Bostwicks' special-needs son, and one pinhole leak near the hot water heater. This pinhole leak was repaired by Bobby Greene Plumbing and the Bostwicks had no further issues. The

Murrays failed to provide any evidence, other than their own assertions, that the Bostwicks willfully misrepresented anything to them in the Statement or otherwise. Therefore, we find that the trial court did not err in concluding that the Murrays failed to carry their burden of proof with regard to their claim of willful misrepresentation.

**Detrimental Reliance**

La. C.C. art. 1967 provides that "[c]ause is the reason a party obligates himself." A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. *Id*. To recover under the theory of detrimental reliance, a plaintiff must prove the following three elements by a preponderance of the evidence: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance. *Belin v. Dugdale*, 45,405 (La. App. 2 Cir. 06/30/10), 43 So. 3d 272.

The Murrays argue that they fulfilled the three requirements necessary to show detrimental reliance. First, the Bostwicks' representation that the home contained no plumbing or piping issues was evidenced by their checking "N" for "no" on the Statement. The Murrays next claim that they relied on this representation in purchasing the home. Finally, they assert that they suffered the detriment of recurring pinhole leaks in the home and the expense of the repairs required by these leaks. For the reasons mentioned above, the record does not support the Murrays' argument that they relied to their detriment on the representations made by the Bostwicks in the Statement. Accordingly, we find no error in the trial court's conclusion that

7

the Murrays failed to prove the elements of detrimental reliance. In addition to the fact that the Murrays failed to meet their burden with respect to their three claims against the Bostwicks, they purchased the home in "as is, where is" condition and waived any claim of redhibition. Considering the foregoing, we affirm in all respects the trial court's findings.

**Fraud**

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953. "Fraud may also result from silence or inaction." *Id*. The circumstances constituting fraud must be alleged with particularity. La. C.C.P. art. 856.

There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) with the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract. *Shelton v. Standard/700 Associates*, 01-0587 (La. 10/16/01), 798 So. 2d 60, 64.

In *Stutts, supra,* the supreme court held that by misrepresenting the condition of the roof on their Residential Property Disclosure Statement, the defendants had satisfied by a preponderance of the evidence the existence of fraud under La. C.C. art. 1953. In *Stutts, supra*, the court noted that the defendants' knowledge of the condition of the roof was evidenced by a previous claim they had filed in which they had asserted defects so severe that the roof needed to be replaced. *Id*. After the defendants were paid to

8

have the roof replaced (on the condition that they replace the roof), they did not do so. Instead, in their disclosure statement, they made a knowing representation that the roof was free from defects and then covered up evidence of the defect.

In the instant case, the Murrays argue that the Bostwicks engaged in fraud because they indicated on their statement that no defects existed in the plumbing of the property but had experienced at least one pinhole leak. However, the Property Disclosure Statement does not guarantee that no defects exist in the property, but rather requires disclosures of known defects to the best of the seller's knowledge, information, or belief. La. R.S. 9:3198(D) specifically states a property disclosure document is not a warranty and is not part of any contract between the buyer and seller. In addition, the Murrays failed to present evidence to establish that the Bostwicks engaged in fraud by checking the "no" box on the Statement. At trial, the Bostwicks testified that they had only experienced one pinhole leak in all the time they owned the house. The leak occurred near the water heater, they called a plumber, and had the leak repaired. They had no more issues with regard to leaks after that time. There is no evidence that the Bostwicks had any knowledge of the potential for future leaks. Therefore, according to the Bostwicks' knowledge, information, and belief, there were no issues with the piping or plumbing in the house and they indicated as much on the Statement.

When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error or clearly wrong standard demands great deference to the findings, for only the fact-finder is cognizant

of the variations in demeanor and tone of voice that bear on the listener's understanding of what is said. *Benton, supra.* Thus, given the trial court's broad discretion as the fact-finder, upon review we find no error in the court's determination that the Bostwicks did not commit fraud against the Murrays concerning the pinhole leak problems they experienced with the home. The record does not reasonably support a finding that the Bostwicks intended to obtain an unjust advantage or cause damage or inconvenience to the Murrays.

## CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed against Plaintiffs/Appellants, Richard and Heather Murray.

**AFFIRMED.**