STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0176

RICHARD LOBUR, JEANNE HARBISON LOBUR, DENISE A. HARBISON, AND MADISON OLIVIA HARBISON

VERSUS

TIMOTHY "TIM" TEMPLE, JR.,[1] INDIVIDUALLY AND IN HIS REPRESENTATIVE CAPACITY AS TRUSTEE OF THE CANDACE TEMPLE ADAMS TRUST, THE CANDACE TEMPLE ADAMS TRUST, AND CANDACE TEMPLE ADAMS

*DATE OF JUDGMENT:* DEC 0 9 2024

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE, STATE OF LOUISIANA
NUMBER C677489, SECTION 24

HONORABLE DONALD R. JOHNSON, JUDGE

\* \* \* \* \* \*

| | |
|---|---|
| Joseph Arthur Smith, III<br>J. Arthur Smith, IV<br>Baton Rouge, Louisiana<br><br>Michael Jerome Jefferson<br>Baton Rouge, Louisiana | Counsel for Plaintiffs-Appellees<br>Richard Lobur, Jeanne Harbison<br>Lobur, Denise A. Harbison, and<br>Madison Olivia Harbison |
| Thomas M. Lockwood<br>Baton Rouge, Louisiana<br><br>B. Scott Cowart<br>George O. Luce<br>Baton Rouge, Louisiana | Counsel for Defendants-Appellants<br>Timothy "Tim" Temple,<br>individually and in his representative<br>capacity as trustee of the Candace<br>Temple Adams Trust, the Candace<br>Temple Adams Trust, and Candace<br>Temple Adams |

\* \* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

---

[1] Although the original petition named "Thomas Richard Temple, Jr." as a defendant in his capacity as trustee for the Candace Temple Adams Trust, a subsequently-filed petition amended the caption to identify the defendant trustee of the Candace Temple Adams Trust as "Timothy 'Tim' Temple."

**CHUTZ, J.**

Defendants-appellants, Timothy "Tim" Temple, individually and in his capacity as trustee for the Candace Temple Adams Trust (the Trust), the Trust, and Candace Temple Adams, appeal the trial court's judgment concluding defendants are liable to plaintiffs-appellees, Richard Lobur, Jeanne Lobur, Denise A. Harbison, and Madison Olivia Harbison, for fraud, violation of the warranty against redhibitory defects, and general damages in connection with the sale of immovable property.[2] We reverse and render.[3]

## PROCEDURAL AND FACTUAL BACKGROUND

On December 17, 2018, plaintiffs filed this lawsuit, averring that they purchased the subject property, which consisted of a lot and a house located at 3436 Perkins Road in Baton Rouge, from defendants on December 15, 2017 for $700,000.00. It is undisputed that the December 15, 2017 act of cash sale executed by the parties included the following provisions:

> PURCHASER(S) agrees and stipulates that **the property**, including the improvements located thereon, **is conveyed and sold "as-is, where-is" without any warranties whatsoever as to fitness or condition**, whether expressed or implied, and Purchaser expressly waives the warranty of fitness and the guarantee against hidden or latent vices (defects in the property sold which render [it] useless or render its use so inconvenient or imperfect that Purchaser would not have purchased it had [he or] she known of the vice or defect) provided by law in Louisiana, more specifically, that warranty ... with respect to Seller's warranty against latent or hidden defects of the

---

[2] Denise Harbison, who is Jeanne Lobur's sister-in-law, owns a one percent interest in the subject property; Madison Olivia Harbison, Jeanne Lobur's niece, owns a 49 percent interest; and the Loburs own the remaining fifty percent of the subject property.

[3] Plaintiffs filed with this court a motion to strike defendants' reply brief, averring that it did not comply with the Louisiana Uniform Rules -- Courts of Appeal in that it consisted "almost entirely of the same points" that defendants had urged in their original brief. According to Rule 2.12-6, "The appellant may file a reply brief, if he has timely filed an appellant brief, but it shall be strictly confined to rebuttal of points urged in the appellee brief. No further briefs shall be filed except by order of the court." We find nothing in this rule requiring that appellants refrain from assertions made in the original appellant brief to rebut the contentions raised in appellees' brief as defendants have done. See and compare e.g., **Parker v. Recreation & Park Comm'n for Par. of E. Baton Rouge**, 2021-0145 (La. App. 1st Cir. 11/1/21), 332 So.3d 706, 715 (issues raised for the first time in a reply brief are not properly before the reviewing court). Moreover, we find plaintiffs have failed to articulate how they have been prejudiced by a reiteration of the same arguments raised in the original appellant brief. Accordingly, the motion to strike is denied.

property sold.... Seller expressly subrogates Purchaser to all rights, claims and causes of action Seller may have arising from or relating to hidden or latent defects in the property [the "as-is, where is" provisions]. [Emphasis added.]

The plaintiffs' twice-amended petition alleges that, prior to execution of the November 3, 2017 purchase agreement, in a property disclosure statement signed on July 27, 2017, Tim misrepresented his knowledge of the condition of the house, including attesting that no repairs had been made and that there were no defects in the house. Plaintiffs further averred defendants provided them with a limited structural evaluation report, dated November 12, 2016, that had been performed by engineer Michael Stein (the Stein report), which included numerous recommendations for repair. According to plaintiffs, defendants represented that all of the work recommended in the Stein report had been completed and that there were no defects in the house. Relying on these representations, plaintiffs alleged they entered into the December 15, 2017 act of cash sale and purchased the house.

In their amended petition, plaintiffs asserted that, contrary to defendants' representations, much of the work set forth in the Stein report had not been completed before December 15, 2017. Plaintiffs averred defendants made these misrepresentations with the intent of inducing them to purchase the property, and that plaintiffs would not have done so had they known of the house's true condition. Thus, they claimed that defendants engaged in fraud, which vitiated their consent to the act of cash sale, and that the "as-is, where is" provisions were without effect. Plaintiffs sought recission of the act of sale and return of the purchase price. In addition, plaintiffs requested compensatory damages, attorney fees, and costs.

Defendants answered the lawsuit, expressly denying they had made any misrepresentations about the condition of the house. Defendants further averred that they provided plaintiffs with the Stein report, the July 27, 2017 property

3

disclosure statement, and invoices from the contractors who performed repairs on the house, which collectively contained detailed information about the condition of the house and were sufficient to provide plaintiffs with actual notice of the existence of any vices or defects that the house may have had, or placed plaintiffs on notice to examine the house to ascertain its soundness before purchasing it. Relying on the "as-is, where-is" provisions of the December 15, 2017 act of cash sale, defendants aver plaintiffs are precluded from recovering any relief for defects in the house.

A three-day bench trial was held commencing on May 9, 2023. At the conclusion, the trial judge advised the respective parties' attorneys to each submit proposed findings of fact, conclusions of law, and a judgment consistent with the relief sought. On September 25, 2023, the trial court held a hearing, allowing the attorneys to argue their respective positions. Adopting plaintiffs' proposed findings of fact and conclusions of law as written reasons,[4] the trial court signed a judgment on September 26, 2023, concluding that in connection with the sale of the house to plaintiffs, defendants committed fraud and, therefore, were liable for violations of their warranty against defects in the sale of the house. The judgment rescinded the December 15, 2017 act of cash sale, declaring the conveyance null and void, and ordered defendants to return the purchase price to plaintiffs. Additionally, general damages of $2,000.00 were awarded to Richard and Jeanne Lobur. Defendants suspensively appealed.

---

[4] The best practice is for the trial judge to author for himself any reasons, including factual findings and legal conclusions. This approach gives the reviewing court the benefits of his thoughts and insights into the matter under consideration. Preparation of a judgment comprised of the stark, final determinations of a case is quite different from the presentation of a party's factual findings and legal conclusions as the inner thoughts of the judge. Thus, this court does not place any real value on the written reasons drafted entirely by counsel for one of the parties. See *King v. Allen Court Apartments II*, 2015-0858 (La. App. 1st Cir. 12/23/15), 185 So.3d 835, 839, writ denied, 2016-0148 (La. 3/14/16), 189 So.3d 1069.

4

## DISCUSSION

Preliminarily, we note that the evidence at trial focused on four defects in the house, discovered by plaintiffs after December 15, 2017. These were (1) the deterioration of the balcony; (2) uneven flooring in the kitchen; (3) water intrusion in the second-floor bathroom; and (4) crawlspace moisture. Relative to these defects, plaintiffs' expert structural engineer, Ryan Dunlevy, testified that only those related to the balcony were major structural defects, describing the others as of a minor nature.

On appeal, defendants contend because the record lacks any evidence of a fraudulent intent or an intent to deceive to obtain an advantage, the trial court erred in concluding they committed fraud in conjunction with the sale of the house. Specifically, they challenge the trial court's findings that (1) they failed to provide information about the repair work performed on the house, thereby misrepresenting the condition of the house; and (2) when Tim, as trustee of the Trust, signed the property disclosure statement on July 27, 2017, he intentionally misrepresented the condition of the house.

Pursuant to La. C.C art. 1953, fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. The party asserting a claim of fraud has the burden of proving fraud by a preponderance of the evidence, both direct and circumstantial. *Markiewicz v. Sun Constr., L.L.C.*, 2021-1535 (La. App. 1st Cir. 6/14/22), 343 So.3d 758, 766. See La. C.C. art. 1957. In order to recover for fraud, plaintiffs bear the burden of proving (1) a misrepresentation of material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury. *Markiewicz*, 343 So.3d at 766. Fraudulent intent, or the intent to deceive, is a necessary and inherent element of fraud. Fraud cannot be predicated upon mistake

5

or negligence, no matter how gross. *Minton v. Acosta*, 2021-1180 (La. App. 1st Cir. 6/3/22), 343 So.3d 721, 730. Moreover, defendants cannot fraudulently conceal their mistake if they have no knowledge of that mistake. *Markiewicz*, 343 So.3d at 766.

A seller warrants his buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520. But this warranty may be excluded or limited pursuant to La. C.C. art. 2548, which provides, in pertinent part:

> The parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer.

While an exclusion or limitation of the warranty against redhibitory defects is usually effective, La. C.C. art. 2548 further provides that "[a] buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have." *Shelton v. Standard/700 Associates*, 2001-0587 (La. 10/16/01), 798 So.2d 60, 64. Under Article 2548, an otherwise effective exclusion or limitation of the warranty against redhibitory defects is not effective if the seller commits fraud, as defined in the civil code, upon the buyer. Thus, although the warranty against redhibitory defects may be excluded or limited, a seller cannot contract against his own fraud and relieve himself of liability to fraudulently induced buyers. *Id.*

The existence of fraud is a question of fact. And the trial court's determination of fraud or its absence is a question of fact that will not be disturbed on appeal absent manifest error. *Smith v. Roussel*, 2000-1028 (La. App. 1st Cir. 6/22/01), 809 So.2d 159, 164.

**Failure to Provide Information About Repair Work:**

In the purchase agreement entered into on November 3, 2017, the parties stipulated, "This Agreement constitutes the entire Agreement between the parties,

6

and any other agreements not incorporated herein in writing are void and of no force and effect." Also in the purchase agreement, under "ADDITIONAL TERMS AND CONDITIONS," plaintiffs' realtor added in longhand, "Seller will provide contractor information for repair work and addition of the PIER to the structure along with any warranty information."

In adopting plaintiffs' factual findings, the trial court concluded that defendants failed to provide: (a) the proposal offered by Joffrion Construction to complete the work set forth in the Stein report for $163,143.00; (b) photographs taken by ABV Construction, which showed the work/repairs the company performed between March and May of 2017; (c) photographs taken by Stein in conjunction with his November 12, 2016 report; (d) the "Inspection and Due Diligence Response" from a prior potential buyer of Candace and her ex-husband prior to the transfer of the house to the Trust; (e) a proposal from WCK Foundation Repair to perform a foundation repair for $24,600.00 in September 2016; and (f) an inspection report undertaken for the Trust dated July 24, 2017, showing issues with water intrusion. Thus, the trial court implicitly determined that that omission of this information constituted a misrepresentation evincing an intent to deceive to obtain an unjust advantage so as to support a claim of fraud against defendants.

A contract constitutes the law between the parties. If the contract's wording is clear and expresses the intent of the parties, the agreement must be enforced as written. *State Through Div. of Admin. v. Migues Deloach Co., LLC*, 2023-0320, (La. App. 1st Cir. 12/27/23), 381 So.3d 781, 790.

Aside from the photographs showing ABV Construction working, none of the remaining items is "contractor information for repair work." The ABV Construction photographs were admitted into evidence by stipulation of the parties. Despite having called Aurelio Lou Vasquez, a managing member of ABV Construction, who identified the photographs of his crew working on the house,

7

plaintiffs failed to elicit testimony that the photographs had been provided to defendants. Likewise, plaintiffs failed to produce any evidence showing that the defendants were given or had knowledge of the photographs at any time between November 3, 2017, when the parties entered the purchase agreement, and December 15, 2017, when the parties executed the act of cash sale. Accordingly, we find that the trial court was manifestly erroneous in its conclusion that defendants committed fraud in the sale of the house to plaintiffs as a result of failing to provide "contractor information for repair work."[5]

**Representations in the Residential Property Disclosure Act:**

As this court noted in *Bella v. Knieper*, 2024-0277 (La. App. 1st Cir. --/--/--), --- So.3d ----, ----, La. R.S. 9:3198(A)(1) of the Residential Property Disclosure Act, La. R.S. 9:3195-3200 (RPDA), mandates that the seller of residential real property complete a property disclosure document. "Property disclosure document" is a defined term under the RPDA and "means a document in a form prescribed by the Louisiana Real Estate Commission, or a form that contains at least the minimum language prescribed by the commission, which is presented by the seller to the purchaser in the manner set forth in R.S. 9:3198(B) and which

---

[5] As set forth in the factual findings that the trial court adopted as its own, reference is made to a text message between Candace and defendants' realtor suggesting that Tim and/or Candace "planned to wait until the sale of the house was consummated, when [p]laintiffs could not back out of the sale, to divulge certain issues with the house to [plaintiffs]." Based on our review of the entire text conversation between Candace and the realtor, this finding is insufficient to permit an inference of a fraudulent intent or an intent to deceive by defendants to gain an unjust advantage. In the text conversation, Candace stated to the realtor, "Talking to Tim and maybe considering making an offer" on one of two houses that Candace had recently visited which were for sale. In response to the realtor's text indicating the sellers of one house "are motivated and can move out ASAP," Candace responded, "I talked to Tim and he said let's wait until we know the [plaintiffs] can't back out of the sale of my house." Accordingly, to the extent the trial court concluded the text conversation constituted a misrepresentation made with a fraudulent intent or an intent to deceive, that determination is manifestly erroneous.

To the extent that the trial court's adopted factual finding that plaintiffs relied upon statements by defendants' realtor in deciding to purchase the house (presumably her statements that in light of the repairs the house was "better than new,") these representations are insufficient to impute to defendants. According to the terms of the November 3, 2017 purchase agreement, the respective realtors representing the parties, "have acted only as real estate brokers ... and make no warranty of any nature unless specifically set forth in writing." Defendants have pointed to, and we have found, no provisions in the purchase agreement in which defendants' realtor made any warranties as to the condition of the house.

8

discloses, at a minimum, known defects in the residential real property." La. R.S. 9:3196(2).

La. R.S. 9:3198(B)(1) provides as follows:

> ***The seller shall complete the property disclosure document in good faith to the best of the seller's belief and knowledge as of the date the disclosure is completed and signed by the seller.*** If the seller has no knowledge or information required by the disclosure document, the seller shall so indicate on the disclosure statement and shall be in compliance with this Chapter. [Emphasis added.]

"Known defect" is also a defined term in the RPDA. La. R.S. 9:3196(1) provides as follows:

> "Known defect" means a condition found within the property that was actually known by the seller and that results in any of the following:
>
> (a) Has a substantial adverse effect on the value of the property.
>
> (b) Significantly impairs the health or safety of future occupants of the property.
>
> (c) If not repaired, removed, or replaced, significantly shortens the expected normal life of the property.

The RPDA further sets forth that the property disclosure document does not serve as a warranty by the seller and cannot be used by the purchaser as a substitution for inspection or warranties. La. R.S. 9:3198(D). Importantly, the RPDA specifically exempts from liability a seller who makes an error or omission that is not a willful misrepresentation, providing in part as follows:

> A seller shall not be liable for any error, inaccuracy, or omission of any information required to be delivered to the purchaser in a property disclosure document if ...:
>
> (1) The error, inaccuracy, or omission was not a willful misrepresentation according to the best of the seller's information, knowledge, and belief.

La. R.S. 9:3198(E).

A seller who makes a willful misrepresentation can be found liable under the fraud articles in the Louisiana Civil Code. See ***Stutts v. Melton***, 2013-0557 (La. 10/15/13), 130 So.3d 808, 813. Stated another way, "[a] claim that the seller

9

violated the provisions of the RPDA ... is a fraud claim." *Id.* at 815-16. See also La. R.S. 9:3200 ("This Chapter shall not limit or modify any obligation between buyers and sellers created by any other statute or that may exist in law.").

In adopting plaintiffs' findings of fact and concluding defendants committed fraud, the trial court expressly determined that when Tim signed the property disclosure statement, he falsely indicated that "[t]he property had never had any damage/defects"; "no repairs had been done to the property"; and "there were no defects with the balcony." Additionally, the trial court expressly found that Tim's representations in the property disclosure statement failed to disclose anything "about prior/current water intrusion, ... mold or mildew issues in the [house], [or] defects regarding the interior or exterior walls, [or] any defects regarding the foundation."

The uncontroverted evidence established that Candace purchased the house with her husband. When they divorced, the house was transferred to the Trust as part of her divorce settlement. When his sister, Candace, decided she wanted to sell the house, in his capacity as trustee, Tim agreed. Because Tim worked full time, his participation in the sale was limited to the attendant administrative duties necessary to facilitate the transfer of the house to plaintiffs and writing the checks to pay for expenses associated with the sale. Candace testified that she was unable to handle the sale of the house and the needed repairs. Therefore, her brother, Ryan, arranged for all the repair work, with Tim's approval as trustee.

As to the property disclosure statement, since she had lived in the house, Candace filled it out. Tim, in his capacity as trustee, subsequently signed the disclosures as filled out by Candace.[6] According to Candace, at the time she filled out the disclosure, she knew there were no defects because she lived in the house

---

[6] Although at trial, Tim testified that it was not his signature on the document, as noted during his trial testimony, in his deposition he had testified that the signature appeared to be his. But Tim ultimately testified that he ratified and affirmed everything his brother and sister did in connection with the sale.

10

and all the defects had been repaired. She further explained that although there had been mold underneath the house in the crawl space, a proper mold testing had been undertaken, and the space had been remediated. Candace stated that she marked "No," in response to Inquiry (15), "Has there been any foundation repair?" because everything had been repaired and there were no issues. Candace identified Ryan's longhand next to Inquiry (15), which noted, "There is no foundation failure or repair but an additional pier was added to meet code requirements/structural requirements."

Mindful that fraud cannot be predicated upon mistake or negligence – no matter how gross – our review of the record reveals that none of the factual findings are supported by evidence of a fraudulent intent or the intent to deceive by defendants. The property disclosure shows that in Section 3, entitled "STRUCTURE," the respondent was asked "Are there any defects regarding the following?" and included the list of items that Candace marked "No." With the exception of the foundation, the inquiry did not expressly elicit information about defects that may have existed in the past. Similarly, Inquiry 41 asked, "Does the property or any of its structures contain any of the following?" Included in the itemized list was "Mold/Mildew" and "Toxic Mold." That Candace interpreted these inquiries as seeking information about the current condition of the house neither shows a fraudulent intent or an intent to deceive by defendants nor permits such an inference. And while Candace incorrectly marked "No," to the question of whether the foundation had been repaired, Ryan's explanation apprised plaintiffs of the modifications made to the foundation.[7] Ryan's handwritten response on the property disclosure statement belies a fraudulent intent or an intent to deceive on

---

[7] Plaintiffs' structural engineering expert Dunlevy opined that when the pier-and-beam system had been installed, the kitchen was over-jacked, lifting the kitchen floor too high and creating stresses in the floor. The repair recommendation of this minor defect was to adjust the beam to the perimeter elevation and then remove and replace the flooring.

11

the part of defendants and cannot support a finding of justifiable reliance by plaintiffs on the "No" answer to Inquiry 15.

To the extent that a reasonable factual basis exists to support a finding that the beam identified by Stein in his November 12, 2016 structural engineering report was not replaced when ABV Construction undertook repairs of the house, the record is devoid of evidence to conclude plaintiffs proved fraud by defendants on this basis. Stein's report stated, "The beam around the balcony was also deteriorated. This location had not yet been opened at the time of my visit. The rotted beams should be replaced and the balcony waterproofed as needed to prevent recurrence." Although Candace believed the ABV Construction repairs resulted in no defects remaining in the house, i.e., that all the defects had been repaired, plaintiffs' expert structural engineer Dunlevy testified that, based on the degree of decay and rot he observed in the beam around the balcony, it was his opinion the work recommended in the November 12, 2016 structural engineering report had not been done to the balcony. Thus, the trial court may have implicitly concluded that, as filled out by Candace and signed by Tim, the property disclosure statement included a misrepresentation. But the record contains nothing to establish any presumed misrepresentation was willfully done with the requisite fraudulent intent or intent to deceive by defendants.

Mindful that a seller cannot be liable for any error, inaccuracy, or omission of any information required to be delivered to the purchaser in a property disclosure document if the error, inaccuracy, or omission was not a willful misrepresentation according to the best of the seller's information, knowledge, and belief, we conclude the trial court was manifestly erroneous in its conclusion that defendants committed fraud sufficient to rescind the December 15, 2017 act of cash sale. The trial court's conclusion to the contrary was error. Therefore, we

reverse the trial court's judgment in its entirety and render judgment in favor of defendants, dismissing plaintiffs' claims.

Plaintiffs filed an answer to the appeal, asserting entitlement to attorney fees on the basis of rescission due to fraud. See La. C.C. art. 1958 ("The party against whom rescission is granted because of fraud is liable for damages and attorney fees."). Because the trial court's conclusion that defendants committed fraud was manifestly erroneous, and we have reversed the judgment ordering rescission, plaintiffs are not entitled to attorney fees and we deny the requested relief.

### DECREE

For these reasons, the trial court's judgment is reversed. Judgment is rendered in favor of defendants, Timothy "Tim" Temple, individually and in his capacity as trustee for the Candace Temple Adams Trust, the Candace Temple Adams Trust, and Candace Temple Adams, dismissing the claims of Richard Lobur, Jeanne Lobur, Denise A. Harbison, and Madison Olivia Harbison against them. The relief requested in the answer is denied. Appeal costs are assessed against plaintiffs.

**MOTION TO STRIKE REPLY BRIEF DENIED. JUDGMENT REVERSED AND JUDGMENT RENDERED, DISMISSING PLAINTIFFS' CLAIMS WITH PREJUDICE. RELIEF REQUESTED IN ANSWER DENIED.**

13